## Case No. 14,306.

### TYLER v. ANGEVINE.

[15 Blatchf. 536; 8 Reporter, 643.] [1]

Circuit Court, N. D. New York. Feb. 6, 1879.

BANKRUPTCY—WRIT OF ERROR—FINDINGS OF FACTS
—FRAUD—LIMITATION OF ACTIONS
—CONSPIRACY.

1. On the trial, before a referee, in the district court, of a suit brought by an assignee in bankruptcy to recover the value of property transferred by the bankrupt in fraud of the bankruptcy act, the referee found, as facts, in his report, that the defendant and the bankrupt concealed from the plaintiff the facts attending said transfer, and that said facts, and the fraud of the bankrupt in making said transfer, were not brought to the knowledge of the plaintiff until within three months before the bringing of the suit. The referee reported that the plaintiff was not precluded from maintaining the suit by reason of its not having been commenced within two years from said transfer. The report was not excepted to. The defendant sued out a writ of error from this court. A case containing exceptions formed part of the record on the return to the writ, but it contained only proceedings which took place prior to the making of the referee's report: *Held*, that the finding of facts by the referee could not be reviewed on the writ of error.

[Cited in Town of Lyons v. Lyons Nat. Bank, 8 Fed. 374.]

2. The referee had found a state of facts which constituted a fraud under sections 35 and 39 of the bankruptcy act of March 2d, 1867 (14 Stat. 534, 536).

3. On the facts as to the concealment of the fraud, found by the referee, the two years statute of limitation in section 2 of said act was no bar

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 8 Reporter, 643, contains only a partial report.]

to the action, although it had not been brought within 2 years after the date of the assignment in bankruptcy to the plaintiff.

4. What evidence is competent on an issue as to conspiracy between the defendant and the bankrupt to defraud the creditors of the latter.

[This was a suit in bankruptcy by John Tyler, assignee of Jacob Shell and John Peter Shell, against Jackson Angevine.]

N. Morey, for plaintiff.
Horatio N. Griffith, for defendant.

BLATCHFORD, Circuit Judge. The referee finds, as facts duly proved, that, at all times between the 1st of May, 1874, and the 15th of June, 1874, and within six months before the filing of the petition in bankruptcy, which was August 3d, 1874, the bankrupts were wholly insolvent and unable to pay their debts, and had been so insolvent for a long time prior to said 1st of May; that the bankrupts, so being insolvent, transferred and delivered to the defendant, the whiskey, on the 30th of May, and the wagon, between the 1st of May and the 15th of June, the whiskey and the wagon being owned by, and in the possession of, the bankrupts at the time of such transfer and delivery; that the whiskey and the wagon were so transferred and delivered in fraud of the bankruptcy act, with a view to prevent the property of the bankrupts from coming to their assignee in bankruptcy, and from being distributed under said act; that, at the time of such transfer of the whiskey and the wagon, the defendant had reasonable cause to believe that the bankrupts were then insolvent, and that such transfer and delivery were made in fraud of said act, with a view, at the time thereof, of preventing the property of the said bankrupts from coming to their assignee in bankruptcy, and to prevent the same from being distributed under the said act; that the value of the whiskey, at the time of such transfer of it, was $1,003, and the value of the wagon, at the time of such transfer of it, was $250; that the defendant and the bankrupts concealed from the plaintiff, the facts attending the said transfer and delivery of said property, and that the said facts and the fraud of the bankrupts in making such transfer and delivery, and the knowledge of the defendant, at the time thereof, of the insolvency of the bankrupts, and that the defendant had reasonable cause to believe them to be insolvent, and the knowledge that the defendant had reasonable cause to believe that the said transfer and delivery of said property was made by said bankrupts with a view to prevent their property from coming to their assignee in bankruptcy, and to prevent the same from being distributed under the said act, was not brought to the knowledge of the plaintiff till the month of March, 1877; and that this action was commenced thereafter, and before the 1st of June, 1877. The referee found and decided, as conclusions of law, that the

plaintiff is not precluded from maintaining this action by reason of its not having been commenced within two years from the said transfer and delivery of said property to the defendant by the bankrupts; and that the plaintiff is entitled to recover, in this action, of the defendant, the sum of $1,253, with $338 52 interest from June 15th, 1874. Judgment was entered in the district court, on said report, by order of that court, on May 15th, 1878, for the $1,253 and the $338 52, with $5 56 additional interest, and $263 76, costs, being, in all, $1,860 84. No exceptions were filed in the district court to said report. The defendant sued out from this court a writ of error to review said judgment. A case containing exceptions forms part of the record on the return to the writ, but it contains only proceedings which took place prior to the making of the referee's report. The record also contains a paper entitled and filed in this court, on behalf of the defendant, as plaintiff in error, purporting to be an assignment of errors, to which there is a joinder by the other party. The errors alleged in such assignment are, (1) that the referee erred in overruling each objection made by the defendant to evidence offered by the plaintiff; (2) that the referee erred in sustaining each objection made by the plaintiff to evidence offered by the defendant, and in excluding material testimony offered by the defendant, duly excepted to by him, and in receiving irrelevant, incompetent and improper testimony, influencing and directing his decision herein, duly excepted to by the defendant, and in that the referee refused to nonsuit the plaintiff, on the motion of the defendant; (3) that the referee was required by law to disregard the evidence of the bankrupts and other witnesses sworn for the plaintiff, on its appearing, uncontroverted, that they had sworn on a prior occasion, and before the register in bankruptcy, in regard to the transaction in dispute, directly contrary to the testimony given by them respectively on the trial of this action, without whose testimony he could not have found certain essential and necessary and material facts stated in his report; (4) that the uncontroverted evidence given on the trial shows that the plaintiff learned, more than two years prior to the commencement of this action, sufficient relative to the transaction or transactions in dispute, to require him to have brought this action prior to the time the same was commenced, in order to prevent the statute of limitations, set up in the answer, from barring the same, and that this action was not commenced within two years after the alleged cause of action therein accrued; (5) that the report of the referee does not state or find facts sufficient to sustain or uphold the conclusions of law stated therein, or either of them, and that he does not find at all as to the fact of payment being made by the defendant to the bankrupts, to the full value of the property

in question, prior to any proceedings relative to them in bankruptcy, in regard to which sufficient evidence was given on the trial, so that it does not appear from said report and judgment, but that the plaintiff, on the enforcement and collection of said judgment, would have received into his hands, as assets, twice the value of said property; (6) that the declaration, and the matters therein contained, are not sufficient in law for the plaintiff to maintain his action; (7) that the judgment was given for the plaintiff, whereas it ought to have been given for the defendant.

The statute of limitation in question is found in the 2d section of the bankruptcy act of March 2d, 1867 (14 Stat. 518), and is in these words: "Said circuit courts shall also have concurrent jurisdiction with the district courts of the same district, of all suits at law or in equity which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee, touching any property or rights of property of said bankrupt transferable to or vested in such assignee, but no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property and rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years from the time the cause of action accrued for or against such assignee." In Bailey v. Glover, 21 Wall. [88 U. S.] 342, an assignee in bankruptcy filed a bill in the circuit court more than 3 years after his appointment, against relatives of the bankrupt, to set aside conveyances of property made to them by the bankrupt, when solvent, with the fraudulent intent to avoid the payment of a particular debt, which was his only debt. The bill alleged that the defendants kept secret their fraudulent acts and endeavored to conceal them from the knowledge of the creditor and the plaintiff, whereby both were prevented from obtaining any sufficient knowledge or information thereof until within the last two years, and that, even up to the present time, they had not been able to obtain full and particular information as to the fraudulent disposition by the bankrupt of a large part of his property. The fraud alleged was not a fraud against the bankruptcy act. The bill was demurred to on the ground that the suit was not brought within two years after the appointment of the assignee. The circuit court sustained the demurrer. On appeal, the supreme court reversed the decree. The court say: "In suits in equity, where relief is sought on the ground of fraud, the authorities are, without conflict, in support of the doctrine, that, where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief, provided suit is brought within proper time after the discovery of the fraud. We also think, that, in suits in equity, the decided weight of authority is in favor of the proposition, that, where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts, on the part of the party committing the fraud, to conceal it from the knowledge of the other party. Booth v. Earl of Warrington, 4 Brown, Parl. Cas. 163; South Sea Co. v. Wymondsell, 3 P. Wms. 143; Hovenden v. Lord Annesley, 2 Schoales & L. 634; Stearns v. Page, 7 How. [48 U. S.] 819; Moore v. Greene, 19 How. [60 U. S.] 69; Sherwood v. Sutton [Case No. 12,782]; Snodgrass v. Branch Bank at Decatur, 25 Ala. 161. On the question as it arises in actions at law, there is, in this country, a very decided conflict of authority. Many of the courts hold that the rule is sustained in courts of equity only on the ground that these courts are not bound by the mere force of the statute, as courts of common law are, but only as they have adopted its principle as expressing their own rule of applying the doctrine of laches in analogous cases. They, therefore, make concealed fraud an exception on purely equitable principles. Troup v. Smith's Ex'rs, 20 Johns. 33; Callis v. Waddy, 2 Munf. 511; Miles v. Berry, 1 Hill (S. C.) 296; York v. Bright, 4 Humph. 312. On the other hand, the English courts and the courts of Connecticut, Massachusetts, Pennsylvania, and others of great respectability, hold that the doctrine is equally applicable to cases at law. Bree v. Holbech, Doug. 655; Clark v. Hougham, 3 Dowl. & R. 322; Granger v. George, 5 Barn. & C. 149; First Massachusetts Turnpike Corp. v. Field, 3 Mass. 201; Welles v. Fish, 3 Pick. 75; Jones v. Conoway, 4 Yeates, 109; Rush v. Barr, 1 Watts. 110; Pennock v. Freeman, Id. 401; Mitchell v. Thompson [Case No. 9,669]; Carr v. Hilton [Id. 2,436]. As the case before us is a suit in equity, and as the bill contains a distinct allegation that the defendants kept secret and concealed from the parties interested the fraud which is sought to be redressed, we might rest this case on what we have said is the undisputed doctrine of the courts of equity, but for the peculiar language of the statute we are considering. We cannot say, in regard to this act of limitations, that courts of equity are not bound by its terms, for, its very words are, that no suit at law or in equity shall in any case be maintained unless brought within two years, &c. It is quite clear, that this statute must be held to apply equally, by its own force, to courts of equity and to courts of law, and, if there be an exception to the universality of its language, it must be one which applies, under the same state of facts, to suits at law as well as to suits in equity. But we are of opinion, as already stated, that the weight of judicial authority, both in this

country and in England, is in favor of the application of the rule to suits at law as well as in equity. And we are also of opinion, that this is founded in a sound and philosophical view of the principles of the statute of limitation. They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred or extinguished, if they ever did exist. To hold, that, by concealing a fraud, or by committing a fraud in such a manner that it concealed itself, until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud, the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common law side of the courts' calendar as to those on the equity side. While we might follow the construction of the state courts in this matter, where those statutes governed the case, in construing this statute of limitation, passed by the congress of the United States as part of the law of bankruptcy, we hold, that, when there has been no negligence or laches on the part of the plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him."

The present suit is a suit at common law. It appears, by the record, that it was referred to a referee "to hear, try and determine the issues" therein. The referee, as to the finding of facts, stood in the place of a jury. It is well settled that, on a writ of error, the finding of facts by the tribunal to which such finding is lawfully assigned in the court below, cannot be reviewed by the court which issues the writ of error. The court in error cannot inquire whether, on the evidence, the facts were rightly decided, and the finding of facts by the tribunal of fact is conclusive on the court in error, in reviewing the case. Bond v. Brown, 12 How. [53 U. S.] 254; York & C. R. Co. v. Myers, 18 How. [59 U. S.] 246, 251, 252; Basset v. U. S., 9 Wall. [76 U. S.] 38, 40; Gregg v. Moss, 14 Wall. [81 U. S.] 564, 569. The referee has found the facts to be as before recited. He finds facts which bring the case directly within the inhibition of sections 35 and 39 of the bankruptcy act of March 2d, 1867 (14 Stat. 534, 536). The state of facts so found by the referee is declared by those sections of the act to be "fraud," and "a fraud on this act." The referee also finds, that the defendant concealed from the plaintiff the facts which the referee so finds as facts, and that the said facts, and the said fraud, that is, the said facts constituting the said fraud, and

the said fraud constituted of the said facts, were not brought to the knowledge of the plaintiff until within three months before the action was brought. The facts so found by the referee, both as to the transfer and the concealment, are directly within the issues raised by the pleadings. The referee does not find that there was no negligence or laches on the part of the plaintiff in coming to the knowledge of the facts so found, and which constitute the fraud, nor does he find specifically that the concealment was the reason why such facts and such fraud were not sooner brought to the knowledge of the plaintiff. But, after the plaintiff had shown, to the satisfaction of the referee, that the facts and the fraud existed and were concealed by the defendant, and that the plaintiff did not, in fact, know of the facts or the fraud until within three months before the suit was brought, the burden was upon the defendant to show affirmatively, to the satisfaction of the referee, that there was negligence or laches on the part of the plaintiff in coming to such knowledge. Such negligence might have been equivalent to actual knowledge. In this view, the finding as to the want of knowledge must be accepted as equivalent to a finding, not only that there was such want of knowledge, but that the absence of the knowledge was not due to negligence or laches on the part of the plaintiff. Especially is this so, in view of the 4th assignment of error, before recited, and of the fact that the defendant put in, before the referee, evidence which it is contended by his counsel proved the truth of the allegation in said 4th assignment of error, as to what the plaintiff had learned, and when, and its effect in law.

These considerations show that the case is brought directly within the ruling in Bailey v. Glover [supra], and that the statute of limitation relied on is no bar to the action. The answer sets up, that the alleged causes of action did not accrue to the plaintiff within two years next previous to the commencement of the action. The 4th assignment of error contains the same allegation. The facts found by the referee show, that the plaintiff is not precluded from maintaining the action, by reason of its not having been commenced within two years after the 27th of October, 1874, which was the date of the assignment to the assignee in bankruptcy, and, therefore, the date when the cause of action accrued to the assignee. The report of the referee finds, that the plaintiff is not precluded from maintaining the action by reason of its not having been commenced within two years from the transfer by the bankrupts. The cause of action did not accrue to the assignee, within the meaning of the statute of limitation, until the assignee received his assignment.

The foregoing observations dispose of the 3d assignment of error. Whether the referee did, or did not, disregard certain specific

evidence, in finding any of the facts stated in his report, is a matter which this court cannot inquire into, or review, on this writ of error. So, also, as to the 4th assignment of error, this court cannot inquire whether the evidence does, or does not, show the fact alleged in said assignment. The same is true as to the 5th assignment of error, in so far as it complains that the referee fails to find at all as to a certain fact. This court cannot examine that complaint. The referee has found affirmatively facts which uphold his 2d conclusion of law. The fact of payment to the bankrupts is merged in the facts found.

No other questions remain to be considered except those which arise on the exceptions stated in the record as taken in the course of the trial before the referee.

(1) A witness for the plaintiff was asked, whether the bankrupts, within a few months prior to their failure, made any statements to him concerning their intended failure, and, if so, what. The defendant objected to the question, as calling for hearsay evidence and evidence that was irrelevant, immaterial and incompetent. The objection was overruled and the answer was, that the bankrupts proposed to him to take a lot of liquors, go to Michigan, sell them at wholesale and break down in the operation, and that would be an excuse for them to break down, and then all three would go thirds in the profits; that they afterwards made a like proposal to him in regard to going to Tonawanda; that they commenced making these offers in the fall of 1873; and that they made the last offer to him on the 6th of June, 1874, the same month in which they failed. The complaint alleges, that the transfers of the whiskey and the wagon were made by the bankrupts and received by the defendant, with the intent, and in pursuance of a scheme and conspiracy between the bankrupts and the defendant, to hinder, delay and defraud the creditors of the bankrupts, by putting it out of the power of such creditors to reach by process of law the property of the bankrupts, and that such transfers were, in fact, fraudulent and void as against the creditors of the bankrupts and as against the plaintiff, as their assignee in bankruptcy. These allegations are denied by the answer. The case made does not set forth all the evidence given before the referee, but only parts of it. It states, that the plaintiff produced different witnesses who gave evidence tending to prove the issues on his part, and that the plaintiff gave evidence tending to show that the whiskey and the wagon were transferred to and received by the defendant in fraud of the creditors of the bankrupts and of the bankrupt act. The statement, in the case, that the plaintiff produced different witnesses who gave evidence tending to prove the issues on his part, is the first statement, in order of time, in the case, as to the giving of any evidence, except an admission as to the proceedings in bankruptcy. What such evidence was does not appear. It was evidence tending to prove the issues. One issue was the conspiracy between the bankrupts and the defendant. Another issue was the insolvency of the bankrupts at the time of the transfers to the defendant. Another issue was the purpose of the bankrupts, in making such transfers, to violate the provisions of the bankruptcy act. The evidence objected to was relevant to the first and third of these issues. It tended to show a conspiracy between the bankrupts and others to defraud their creditors, to which conspiracy the defendant afterwards became a party. The case shows much other evidence of such conspiracy. It is true, that the declarations of the bankrupts, objected to, did not relate to the particular whiskey sued for in this suit. But, the common object of the bankrupts and of all with whom they conspired, including the defendant, was to defraud the creditors of the bankrupts. Necessarily, while the bankrupts dealt with all their property, one transferee would deal only with one piece of property, and another with another. But, the object was a common one with the bankrupts and all the transferees and conspirators. Nor is it of consequence that the particular declarations now under consideration were in reference merely to proposed acts of fraud which may not have been consummated in the particulars proposed. The proposed acts were sui generis with those committed by the defendant. It must be assumed, from the statement in the case, that a foundation was first laid, by proof, sufficient in the opinion of the referee to establish prima facie the fact of the conspiracy alleged in the complaint. That being so, every declaration of the bankrupts in reference to the common object before mentioned is admissible in evidence. It makes no difference at what time the defendant joined the conspiracy. Every one who enters into a common design is generally deemed, in law, a party to every act which has before been done by the others, in furtherance of the common design; and this rule extends to declarations. 1 Greenl. Ev. § 111. But, the evidence also tended to show, from the mouths of the bankrupts themselves, their purpose and intent in their transactions with the defendant, by showing the proposals of fraud in the same direction, which they were making down to a date subsequent to the transfer of the whiskey to the defendant, and for some months before such transfer. Such evidence was competent. U. S. v. 36 Barrels [Case No. 16,469]; Wood v. U. S., 16 Pet. [41 U. S.] 342, 361; Taylor v. U. S., 3 How. [44 U. S.] 197; Buckley v. U. S., 4 How. [45 U. S.] 251. On an inquiry as to the state of mind, sentiments or dispositions of a person at a particular period, his declarations and conversations are admissible. 1 Greenl. Ev. § 108.

(2) The foregoing views apply to the offer of one of the bankrupts, during the same pe-

rio of time, to convey his farm to the same witness, upon the understanding that he ·was to pay nothing for it; and to the representations the bankrupts made, in March, 1874, as to their pecuniary condition, whereby they obtained goods on credit, for which they never paid.

(3) The evidence as to the large purchases, by the bankrupts, of goods on credit, during the fall and winter, in connection with evidence as to the manner in which they disposed of such goods, was competent, as showing the nature and extent of the fraudulent scheme of which the transactions with the defendant formed a part.

(4) It was proper to show that the bankrupts, by deeds made between May 24th, 1874, and June 6th, 1874, conveyed certain real estate, in connection with further evidence which tended to show that those deeds conveyed all the real estate to which either of the bankrupts had title at that time. This was evidence tending to show the general scheme of fraud.

(5) Evidence of propositions for the fraudulent transfer of goods, made by one of the bankrupts, was competent, as against the defendant, in a civil suit like this. The conspiracy being proved, the declarations of each conspirator are admissible.

(6) There can be no objection to the plaintiff's testimony as to what property of the bankrupts he found, as assignee.

(7) It was competent to prove, by one of the bankrupts, what capital and property they had when they went into business, and the condition of the property, and how they raised money to start the business, and what was the condition of their business in the fall of 1873, and what they did, at that time, to relieve themselves from embarrassment, and that, after they knew they were insolvent and would have to suspend, they bought goods largely, on a credit of from 4 to 6 months, and shipped away the greater part, and failed with an indebtedness of $44,000 and a stock on hand of only from $4,000 to $6,000. All this went to show the character of the conspiracy which the defendant joined.

(8) It was competent to show the transaction with the defendant as to the 50 barrels of whiskey, prior to the one as to the 10 barrels in suit, as tending to characterize the latter.

(9) It was not error to excuse the bankrupt, on the ground of personal privilege, from answering the question as to whether the defendant paid the bankrupts for the ten barrels, on the ground that it might criminate him to answer, he being under indictment for putting goods out of the way to defraud creditors.

(10) It was proper to show the transfer of a patent by the bankrupts, May 30th, 1874, as part of the carrying out of the conspiracy to which the defendant became a party.

(11) There is no valid objection to the testimony as to the note given to Thayer in May, 1874, as it is part of the history of the bankrupts' transactions after the inception of the frauds.

(12) The deed of his farm by one of the bankrupts, in September, 1873, was not incompetent, as the frauds seem to have had their inception about that time. It is no valid objection that the grantee in such deed is not a party to this suit, nor that the deed was an act of only one of the bankrupts.

(13) The testimony of the plaintiff as to the time when he first learned the facts relative to the transfer of the property in question, and to the sham payment for the whiskey, was competent under the law as to the statute of limitation.

(14) It was proper to exclude such parts of the prior deposition in bankruptcy of the witness Jacob Shell as his attention had not been called to on his examination in this suit, as the former deposition is stated, in the case, to have been offered by the defendant with a view to contradict the testimony of the witness given in this suit and to affect his credibility.

No error is found in the record, and the judgment below is affirmed, with costs.