## McKNEELY v. TERRY.

Opinion delivered January 18, 1896.

LACHES—WHAT CONSTITUTES.—Where, after conveying an interest in land, the grantor retained possession of the land for sixteen years, having fraudulently secreted the deed to the grantee, and during that time appropriated all of the rents and profits, and sold part of the property, retaining the proceeds, and refused numerous requests of the grantee to be allowed to enjoy his interest, delay on the grantee's part for that length of time before bringing suit is such laches as will bar relief, although there was evidence tending to show that the grantor had verbally recognized the grantee's interest; the grantor's actions being entitled to more weight than his promises.

ADVERSE POSSESSION—HUSBAND AND WIFE.—Where a husband is under obligation to convey land to his wife, the presumption is that his possession is in subordination to her title, legal or equitable.

ADVERSE POSSESSION—CO-TENANTS.—The mere taking of rents by a co-tenant, although continued for the entire statutory period, is insufficient of itself to show an ouster of his co-tenants, so as to make his possession adverse. In order to set the statute in motion, he must have absolutely denied the title of his co-tenants, or by other notorious acts have indicated his intention to claim and hold the estate exclusively.

DEED—NECESSITY OF ACKNOWLEDGMENT.—A deed made and delivered to the grantee passes the title as between the parties and their heirs, though it is not acknowledged.

LACHES—EFFECT OF FRAUD.—The heir of a grantee of land is not guilty of laches in delaying for 16 years before bringing suit in equity for its recovery against the grantor where the latter fraudulently abstracted and secreted the deed, and the heir had no knowledge of its existence, or of facts which, with reasonable diligence, would have led to its discovery.

SPECIFIC PERFORMANCE—WHEN DENIED.—An alleged agreement by a husband to convey an interest in certain land to his wife will not be specifically enforced in favor of the wife's heirs 20 years after its execution and 13 years after her death, where it does not appear that she ever claimed any interest in the land.

DOWER—TRUST LAND.—No right of dower can be set up by the widow of the holder of the legal title to land against the holder of the equitable title.

CLAIM AGAINST DECEASED CO-TENANT—LIEN.—A claim by one tenant in common for rents collected by his deceased co-tenant is a claim against such co-tenant's estate, and not against his heirs, and should be exhibited to the administrator, and on failure to do so equity will not decree a lien therefor on the interest of such heirs.

Appeal from Miller Circuit Court in Chancery.

RUFUS D. HEARN, Judge.

STATEMENT BY THE COURT.

Plaintiffs, Mollie C. Terry and John D. Trigg, as the only heirs of John P. Dickson, deceased, seek to cancel a deed executed by him to Samuel W. McKneely to what is known as the "John Dickson place" in Miller county, Ark. They say that said deed was procured

through fraud and undue influence of McKneely, and that he, on being charged with the fraud, entered into a written obligation in 1869 with David H. Dickson, by which he was to convey said place to the heirs of John P. Dickson, to-wit: David H. Dickson, John D. Trigg and Lavinia McKneely, wife of him, the said S. W. Mc-Kneely, and that by said agreement he was to retain possession of the lands, having the exclusive enjoyment of the rents and profits for three years, when he was to surrender same to said heirs; that, in pursuance of said contract, in 1873 he surrendered said place to David H. Dickson, the father of plaintiff, Mollie C. Terry, and guardian of plaintiff, John D. Trigg; that David H. Dickson died in 1873 in possession; and that, soon there-after, McKneely secretly abstracted said written obligation from Mrs. Sallie Dickson, widow of the said David H. Dickson, and fraudulently repossessed himself of said lands. The bill alleges the death of Mrs. Lavinia McKneely, and that plaintiffs, Mollie C. Terry and John D. Trigg, are her sole heirs. Reasons for delaying suit are then set forth at length, plaintiffs W. L. and Mollie C. Terry claiming that they had been kept in ignorance of their rights by the fraud of McKneely in taking and concealing the instrument which was the evidence of their title, and John D. Trigg claiming that delay on his part, was occasioned by the repeated promises of McKneely to let him [John D. Trigg] in to enjoy his interest, which, it is alleged, he, McKneely, always recognized. It is alleged also that Mollie C. Terry was protected in her rights by infancy and coverture from the statute of limitation. The bill concludes with a prayer for a receiver, a restraining order, cancellation of the deed, decree of ownership in plaintiffs, possession, rents, and all proper relief. This bill was filed in March, 1889. In December, 1890, plaintiffs filed an

amendment to the original bill, alleging that Samuel W. McKneely and his wife, Lavinia, at the time of the execution of the written obligation mentioned in the original, also executed deeds to David H. Dickson and John D. Trigg, which were delivered to David H. Dickson for himself and for John D. Trigg, his ward. They charge that these deeds were also secretly abstracted from the possession of the widow of David H. Dickson, but that the one made to David H. Dickson for himself, had been discovered since the commencement of the suit, and the other, if not destroyed by Samuel W. McKneely, had been burned, with other papers, in the house of Mrs. Dickson in 1875. The amendment in detail explains why the deed to David H. Dickson was not discovered and produced before, and makes same an exhibit. Then, after alleging that McKneely had appropriated the entire rents for many years, amounting to several thousand dollars, it concludes with prayer for an accounting, and as in the original.

Mrs. Mattie McKneely, widow of Samuel W., demurred to the bill, which was overruled. She then answered separately, denying any ownership of plaintiffs in the lands sued for, and alleging a lack of information sufficient to form a belief as to the alleged fraud and undue influence of McKneely in procuring the deed; also a lack of information sufficient to form a belief as to the alleged written agreement between McKneely and David H. Dickson for conveyances, possession, etc., as set forth in the bill. She pleaded staleness of plaintiffs' claim, and the statute of limitation, and set up affirmatively that she was entitled to dower as an innocent purchaser for value. For answer to the amendment to plaintiffs' bill, she alleged a want of information, etc., as to the execution of the deeds mentioned therein, and as to knowledge of W. L. Terry and wife concerning same. She demurs to the

claim for rents and profits, as being no cause of action against her, and suggests that there was an administration, and that the administratrix was a necessary party. The heirs of McKneely answered, denying any ownership of plaintiffs in the lands in controversy, also the alleged fraud and undue influence in procuring the deed thereto, and the alleged written agreement of Samuel W. McKneely and his wife to convey to the heirs of John P. Dickson, their alleged undivided interest, and to yield to them possession after three years. They adopt the answer of Mattie McKneely, except as to the dower of Mrs. Sallie Hayden (formerly Mrs. Sallie Dickson), which they deny she has ; and, by an amendment to their answer, in answer to the amendment to the original bill, they say that the instrument purporting to be a deed from Samuel W. McKneely to David H. Dickson was never acknowledged or perfected as a deed, and that no possession was ever taken under it ; that the possession of David H. Dickson in 1873 was by the sufferance of McKneely ; and that, after David H. Dickson died, McKneely again took possession in 1873, and held same continuously till his death.

The court appointed a receiver to take charge of the property when suit was begun, and a special master to state an account for rents, improvements, taxes, etc. from the time McKneely took possession till the institution of this suit ; decreed to Mrs. Terry an undivided one-third interest in the lands sued for ; gave judgment in her favor in the sum of $8,857.10, the amount of rents for her share of the land, and decreed same to be a lien upon the undivided two-thirds residue. Both parties appealed.

*Scott & Jones*, for appellant, Mattie McKneely.

1.   The statute in this case commenced to run prior to April, 1876, as McKneely openly asserted *that the place*

*was his, and he intended to keep it.* A married woman is chargeable with laches with respect to her separate property, the same as if she were discovert. Her disabilities having been removed, she is, to the same extent, relieved of the consequences of coverture. 55 Ark. 85 ; 56 *id.* 497 ; Freeman, Co-Tenancy, sec. 373.

2. McKneely was in possession, and declared it was his, and that he would keep it. Of this Mrs. Terry had knowledge, or by the exercise of ordinary diligence could have obtained knowledge. If the facts were concealed by John D. Trigg, this was not the fraud or concealment of McKneely. The fraudulent concealment must be that of the party sought to be charged. 39 Mich. 160 ; 16 Ark. 672 ; 17 *id.* 199. Whatever is notice enough to excite attention, and put the party on his guard, and call for inquiry, is notice of everything to which such inquiry might have led. When one has sufficient information to lead him to a fact, he shall be deemed conversant of it. 3 Mylne & K. 722 ; Angell, Lim. sec. 187 *n;* 11 Otto, 135. A. party seeking to avoid the statute bar must show that he used due diligence to detect the fraud, and, if he had the means in his power to discover it, he will be held to have known it. 28 Miss. 432 ; 11 Otto, 135 ; 28 Fed. 275 ; 13 *id.* 159 ; 21 Wall. 503 ; 6 Wheat. 481 ; 146 U. S. 88 ; 152 *id.* 412. When the seal of death has closed the lips of him whose character is assailed, and lapse of time has impaired the recollection of transactions, and obscured their details, the welfare of society demands the rigid enforcement of the rule of diligence. 6 Wheat. 481 ; 143 U. S. 224. The claim is stale, and barred by laches.

*E. F. Friedell* and *Dan W. Jones & McCain,* for appellants, the heirs of McKneely.

1. The claim is stale, and barred by laches. 143 U. S. 224, 274.

2. The possession of one tenant in common is the possession of all; but if one ousts the other, or denies his tenure, his possession becomes adverse. 16 Pet. 455; 3 *id.* 51; 23 Cal. 245. Courts of equity invariably discountenance laches and neglect, especially where death intervenes. 41 Ark. 301; 43 *id.* 469, 483. Equity follows the law in matters of limitation. 41 *id.* 484. Even in trusts the rule applies. 2 Wall. 87; 41 *id.* 301, 484. There is no pretense of concealment by Mc-Kneely. Arkansas is one of the few states in which the statute grants no indulgence where the cause of action has been concealed by defendant. Wood on Lim. sec. 274; 13 Ark. 291; 16 *id.* 694; 32 Miss. 233; 101 U. S. 135. Mrs. Terry cannot tack her disability of coverture to that of infancy. Sand. & H. Dig. sec. 4815; 47 Ark. 301.

3. The decree for rents is erroneous, for several reasons. The occupation by one co-tenant never raises an implied promise, or creates an obligation to pay rent to the others. 48 Ark. 13; 4 Kent. Com. 369; Freeman, Co-ten. sec. 258; 31 Mich. 136; 30 Md. 120; 72 Ala. 567; 29 Minn. 252; 45 Iowa, 639; 12 Cal. 414; 23 La. An. 150. The decree must of course proceed on the theory of *adverse* holding. But three years is the limitation against the right to recover rent, both at law and in equity. As to the common law rule, see Bouv. Law Dict. "*Mesne Profits;*" 46 Penn. St. 15; 3 Yeates (Pa.), 13; 5 Vesey, Jr. 743; 10 *id.* 469; Freeman, on Co-Ten. sec. 272; 48 Ark. 135. But see our statute. Sand. & H. Dig. sec. 2592. But the heirs are not liable for rents accrued before McKneely's death at all. Plaintiffs' only remedy was to probate the claim against his estate. 18 Ark. 334; 39 *id.* 577; 28 *id.* 267; 43 *id.* 457. But if they were, it was error to adjudge it a lien on the other co-tenants' share in the land. 52 Ark. 492; 56 *id.* 624.

4. The administrative of McKneely was a necessary party, and should have been joined as defendant.

*W. L. Terry* and *L. A. Byrne*, for appellees.

1. The declarations of McKneely to Mrs. Hayden were not notice to Mrs. Terry, for she was not *the ancestor* of Mrs. Terry. 25 Mich. 188; 46 N. W. 533. But, had the declaration been made to Mrs. Terry, she was then covert, and her action would have been preserved by the statute.

2. The deed from John P. Dickson to McKneely was obtained through fraud and undue influence upon an *inexperienced man* towards whom he occupied *a relation of trust and confidence.* 1 Story, Eq. Jur. p. 333 and note; 26 Ark. 604; 42 Md. 513; 6 Fla. 104; 6 Gill, 41; 6 Mich. 111; 3 Jones, Eq. (N. C.) 496; 73 N. Y. 498; 41 Barb. 326; 60 Miss. 1025; 16 N. Y. *Ford* v. *Harrington*; 77 Mo. 396; Wait, Ac. & Def. p. 478; 1 Perry on Trusts, secs. 166, 204, 210, 227; 35 Fed. Rep. 246. Upon the death of John P. Dickson, his equitable estate descended to David H. Dickson, Lavinia McKneely and John D. Trigg. Mansf. Dig. sec. 2540. They became tenants in common. Mansf. Dig. secs. 2535, 2541. When McKneely entered into possession, the law will presume his possession to have been in right of his wife. Wood on Lim. p. 578; 32 N. J. L. 251; 2 Seld. 342; 35 Ark. 89; 1 Am. & Eng. Enc. Law, p. 250. Thus, on Lavinia C.'s death, her one-third interest passed to Mrs. Terry and John D. Trigg. Mrs. Terry's rights were saved by Mansf. Dig. sec. 4471 as construed in 42 Ark. 305; 44 *id.* 398. John D. Trigg's right was preserved by the *continued recognition of McKneely himself.*

3. The proof is clear that McKneely executed the conveyance in question in 1869, and in accordance therewith held possession until the close of 1872; that

David H. Dickson then *took possession, and died in such possession,* holding a deed from McKneely and wife for his undivided third interest. No right of action thus accrued in David H. Dickson's lifetime. At his death his title passed to his heirs. 77 Tex. 629. The mere possession by McKneely was not notice of an adverse holding. 46 Ark. 25 ; 48 *id.* 248 ; 52 *id.* 76 ; 52 *id.* 168. Notice must. be given of an adverse holding. Wood, Lim. sec. 266. The collection of rents for 1874 or 1875 was not sufficient to put Mrs. Terry on notice. But in 1874 she was a minor, and in October, 1875, she became covert, and no subsequent acts could change her. Wood on Lim. p. 559 ; *Todd* v. *Todd* (Ill.), 4 West. ; 1 Washburn, Real Prop. (5 ed.), p. 691. If Mrs. Terry was not put upon notice *before* her marriage, the statute did not run. 42 Ark. 301 ; Sand. & H. Dig. sec. 4815. The deed of 1867 was only notice to those who are bound to search the records, such as a subsequent purchaser or incumbrancer. Martindale on Conv. sec. 276.

4. Whether McKneely actually executed a deed or not for John D. Trigg's interest, the effect of the "short paper," as described by Mrs. Hayden, was to make McKneely a trustee under an *express* trust, and any subsequent repudiation of that trust would have to be clearly brought home to the knowledge of the equitable owners before the statute would begin to run. 46 Ark. 25 ; 48 *id.* 248 ; 52 *id.* 76 ; *Ib.* 168 ; Story, Eq. Jur. (13 ed.), vol. 2. p. 283 ; 44 Ark. 456. McKneely *never* denied the right and claim of Trigg.

5. In view of the fraudulent act of McKneely in making away with and concealing the papers, and the *want of knowledge* by Mrs. Terry of this fact, the statute will not run until there is a discovery. 101 U. S. 135 ; 2 Wall. (U. S.), 458 ; 120 U. S. 136 ; 21 Wall. 342-7 ; 3 Mass. 201 ; 5 Mason, 163 ; 12 Ga. 371 ; 35 *id.* 40 ; 1 Pom. Eq. Jur. p. 415 ; 41 Ark. 305 ; 46 *id.* 35 ;

26 Wis. 622; 21 N. W. 639. If this discovery is made during infancy or coverture, the statute only runs from the removal of the disability. Sand. & H. Dig. sec. 4815; 12 S. W. 1058; 79 Mo. 540; 21 N. W. 639; 46 Iowa, 655.

6. But, laying aside the question of infancy and coverture, under the peculiar circumstances of this case, the *obscurity* of the transaction, the relationship of parties, etc., Mrs. Terry was not guilty of laches. 2 Sch. & Lef. 474–487; 12 Pa. St. 49; 2 Story, Eq., sec. 1520; 78 N. Y. 159, 187; 9 H. L. Cas. 360, 383; 3 Wait, Ac. & Def. 472; 152 U. S. 416; 56 Ark. 497.

7. Mrs. McKneely was not entitled to dower. 2 Oh. St. 417; 1 Washb. Real Prop. 228; Tiedeman on Real Prop. sec. 129; 1 Bishop, Mar. W. sec. 328; Scribner on Dower, vol. 1 pp. 267, 290, 369.

8. As to John D. Trigg, McKneely's possession was never adverse, as he always recognized his claim. 22 Ga. 288; Wood on Lim. p. 576; 12 Am. & Eng. Enc. Law, 559, 560; 56 Ark. 497.

9. McKneely was liable for rents *received* by him, and the three-years statute is not applicable to him. Sand. & H. Dig. sec. 5917, 2592; 47 Ark. 531; 48 *id.* 187. The court properly decreed them a lien on the land. 55 Ark. 100; Knapp on Partition, 385; Story, Eq. Jur. p. 663.

WOOD, J., (after stating the facts). The questions are: First. Was the deed from John P. Dickson to McKneely void for fraud and undue influence? Second. Did Samuel W. McKneely, in 1869, execute deeds to David H. Dickson and John D. Trigg to an undivided one-third in the lands in controversy? And did he enter into a written obligation with David H. Dickson, at the same time, by which he (McKneely) was to retain possession of the entire place for three years, and at the end of which time he was to surrender to the heirs; and

was this agreement fulfilled? Third. If plaintiffs, Mollie C. Terry and John D. Trigg, have the legal title to an undivided interest in the whole or a portion of the lands in controversy, are they barred from recovery by laches or limitations? Fourth. Are plaintiffs, Mollie C. Terry and John D. Trigg, entitled to an undivided one-sixth, each, in the lands sued for, as the only heirs of Mrs. Lavinia McKneely. Fifth. Is Mrs. Mattie McKneely entitled to dower as an innocent purchaser for value? Sixth. Can plaintiffs, if they are decreed the owners of an undivided interest, recover rents for their share collected by McKneely in his lifetime; and can they have a lien for rents declared upon the undivided interest remaining in the heirs of McKneely?

1.   Was the deed void?

The circuit court, in an elaborate decree, in which we think the facts are accurately discussed and the law correctly applied, found that there was no evidence to justify setting aside the deed. We are of the same opinion. A discussion of the facts leading to this conclusion could only be of interest to the parties litigant, and would serve no useful purpose as a precedent. The law is too well settled for discussion. The plaintiffs, therefore, cannot recover as to the heirs of John P. Dickson.

2.   The chancellor found that in 1869 McKneely executed conveyances to David H. Dickson and John D. Trigg, securing to them, respectively, the interest they claimed in the lands, and also executed an agreement by which he was to hold the land for three years, after which he was to surrender the same; that McKneely did hold the lands for three years, and then gave possession to David H. Dickson, father of Mollie C. Terry, who held until he died in 1873; that, after David H. Dickson's death, McKneely again took possession, and collected and appropriated to his own use the rents and

profits until his death in 1889. These also are purely questions of fact, and the evidence fully supports the court's conclusion. This answers the second proposition, and determines the right of Mollie C. Terry, as the only heir of David H. Dickson, and of John D. Trigg, to recover under their deeds, unless they are barred by laches or limitation.

What constitutes laches.  3. Are they barred? As to John D. Trigg, the court found that he was present when the settlement was had between McKneely and David H. Dickson, guardian of John D. Trigg, whereby the interest of John D. Trigg in the land was conveyed to him ; that he was eighteen years old, and understood the agreement for McKneely to hold the land for three years, and for David H. Dickson to take possession at the end of that time ; that he knew that McKneely repossessed himself of the land in 1873, after David H. Dickson's death; that at this time John D. Trigg was of age, and knew that McKneely had been accused of fraudulently taking and secreting the deeds to this land in the same year, 1873. And the court found that, for sixteen years, McKneely held the land, collected and appropriated the rents of the entire place to his own use ; that the rents amounted to a large sum, the place being valuable; that, at various times before McKneely's marriage with the defendant Mattie, in ————, John D. Trigg applied to him to be let in to enjoy his interest, and was always refused ; that plaintiff John D. Trigg had labored under no disability since 1873 ; that, about four years before the bringing of this suit, he had been informed by McKneely that he (McKneely) had leased the lands for five years, and therefore could not let him (John D.) in to enjoy his interest. The court found that McKneely in 1878 had sold a valuable portion of the land, and had appropriated the purchase money to his own use, and that John D. Trigg knew this. These

findings are supported by the evidence. There was testimony by John D. Trigg and others to show that McKneely had repeatedly recognized John D. Trigg's interest in the land,—in fact, had never denied it,—and had often promised to let him in to enjoy his interest. John D. Trigg claimed and testified that his neglect to sue earlier was by reason of these promises, and because of McKneely's continued recognition of his interest. But the court found that John D. Trigg must have known that McKneely's possession, was adverse, and concluded that his delay in bringing suit was "unreasonable and unjustifiable." This conclusion was certainly correct, if McKneely's actions, as disclosed by the record, were of more weight and significance than his promises and professions. The learned chancellor thought they were, and the preponderance, we think, sustains his findings. There was no error in dismissing the bill as to plaintiff, John D. Trigg.

As to the plaintiff, Mrs. Terry, it appears that her ancestor, David H. Dickson, died in possession of the land in controversy in 1873. At that time, she was sixteen years of age. Two years after, she intermarried with W. L. Terry, when she was something over eighteen. The deeds to David H. Dickson and John D. Trigg conveyed to each an undivided one-third interest in the lands sued for, McKneely retaining an undivided one-third. It is not contended that McKneely ever executed any deed to his wife for an undivided one-third, but only that he agreed to do so. Be that as it may, if McKneely was under any obligation to convey the land to his wife in 1873, when he repossessed himself, the presumption would be that his possession was in subordination to her title, legal or equitable. 1 Am. & Eng. Enc. Law, 250 and cases cited; *Corwin* v. *Corwin*, 2 Seld. 342, cases; 1 Wood, Lim. 578; *Banks* v. *Green*, 35 Ark. 89.

When husband's possession subordinate to wife's rights.

If the title to the undivided one-third remaining was not in his wife, it was in him, and, in either case, his possession was that of a tenant in common with Mollie C. Terry and John D. Trigg, and continued so to be until some act so open, notorious and unequivocal as to operate as notice to his co-tenants that his holding was adverse. 2 Wood, Lim. 258. See, also, *Bryan* v. *City of East St. Louis*, 12 Ill. App. 397. "It is," says Mr. Angell, "from the nature of the estate that a tenant in common of land, in the enjoyment of his rights, must necessarily, *prima facie*, be in possession of the whole." Angell, Lim. 429. "The possession, therefore, of one tenant in common is the possession of all." 2 Wood, Lim. 266. Prior to an interview which Mrs. Hayden had with McKneely in 1876, in which he stated that the place was his, and he intended to keep it, there is nothing to show that his possession was adverse to his co-tenants. There is no proof that he entered upon the land in 1873 as sole owner. There was evidence tending to show that McKneely in 1875 had abstracted the deed, which was the only evidence of title in the heirs of David H. Dickson, and, while this might have indicated a purpose to claim the land as his own, yet, if so, it was a secret purpose, for the abstraction was secret, and would not operate as notice of an adverse holding. And, although Mrs. Dickson may have discovered the same a short time thereafter, there is no evidence that she communicated the fact to Mrs. Terry at a time when she was under no disability. There was also proof that McKneely had collected and appropriated the rents for the year 1874, and had rented the place for the year 1875, though it is doubtful if he had collected the rents for 1875 before the marriage of plaintiff Mollie C. Terry in Oct. 1875. But the pernancy of the rents, although for the whole statutory period, would not, of itself, be conclusive evidence of an

ouster of his co-tenants by McKneely, because that is susceptible of explanation consistent with his rights as co-tenant. In order to set the statute in motion, he must have absolutely denied the title of his co-tenants, or by other notorious acts have indicated his intention to claim and hold the estate exclusively. 2 Wood, Lim. 266, and cases cited; *Ricard* v. *Williams*, 7 Wheat. 121; *Prescott* v. *Nevers*, 4 Mason (U. S. Cir.), 326; *Jackson* v. *Tibbits*, 9 Cow. 241; *Parker* v. *Proprietors of Locks, etc.* 3 Met. (Mass.) 91; Angell, Lim. 429; *M'Clung* v. *Ross*, 5 Wheat. 116; *Todd* v. *Todd*, 117 Ill. 92. See also *Sydnor* v. *Palmer*, 29 Wis. 226.

The first unequivocal act, indicating an intention on the part of McKneely to hold adversely to his co-tenants, was his declaration to that effect made to Mrs. Dickson in 1876. The second was the sale in his own name of a valuable portion of the place in 1878 to Elias Pickett, and the appropriation of the money received therefor to his own use. *Clapp* v. *Bromagham*, 9 Cow. (N. Y.) 530. Mollie C. Terry, however, was a *feme* covert when both these occurred, and expressly protected by the statute of limitation. Sec. 4815, Sand. & H. Dig. True, this court in *Gibson* v. *Herriott*, 55 Ark. 85, said: "The disabilities of coverture in respect to her separate property having been removed, she is to the same extent relieved of its consequences." But this language is only applicable to the assertion of her rights, as to her separate property, in all cases where the statute has not made an exception protecting her. It is applicable, of course, to the statute pertaining to judicial sales, for she is not excepted from its operation. Sec. 4818, Sand. & H. Dig; *Batte* v. *McCaa*, 44 Ark. 398; *McGaughey* v. *Brown*, 46 *Ib.* 25.

Plaintiff Mollie C. Terry was not barred by the statute of limitation. *Is she barred by laches?* As was held in *Gibson* v. *Herriott, supra*, a married

woman, with reference to her separate property, may be guilty of laches, as though she were discovert. It is alleged, in the amendment to the original bill, that the deed to David H. Dickson was secretly abstracted and made way with by McKneely, and that they (plaintiffs) had no knowledge or information of the existence of such deed until after the commencement of this suit, and that the commencement of the suit was prevented by the wrongful conduct of McKneely in taking and carrying away said deed, and fraudulently concealing from said plaintiffs any and all knowledge of its existence. This was a sufficient replication to the plea of laches.

Acknowledgment not necessary to pass title.

The heirs of McKneely, in the amendment to their answer, say "that the deed was not acknowledged and perfected as an instrument of conveyance and no possession was ever held under it by David H. Dickson." It is clear from the proof that the deed was made and delivered to David H. Dickson as alleged. It therefore passed the title, between the parties to it and their heirs, whether acknowledged or not. *Floyd* v. *Ricks*, 14 Ark. 294.

Fraud as affecting the question of laches.

In the language of the learned chancellor below, "the deed was the best evidence of Mrs. Terry's rights, and the most effective instrument to enforce them." The court found that the deed under which Mrs. Terry claimed was "fraudulently taken away and kept concealed by McKneely." The proof justifies this finding. How does it affect the question of laches? It is contended by appellants that, as the statute (sec. 4815 Sand. & H. Dig.), makes no exception as to a cause of action fraudulently concealed, the courts can make none, and that this holds good as to both courts of law and equity, as the statute in express terms is made applicable to both.

Section 4846, Sand. & H. Dig., provides "that if any person, by leaving the county, absconding or concealing himself, or any other improper act of his own, prevent the commencement of any action in this act specified, such action may be commenced within the terms respectively limited after the commencement of such action shall have ceased to be prevented." The words "any other improper act of his own" would seem to be broad enough to cover cases of fraud. But, aside from this statute, the result would be the same. "It is the established rule of equity, as administered in the courts of the United States, that where relief is asked on the ground of actual fraud, especially if such fraud has been concealed, time will not run in favor of the defendant until the discovery of the fraud, or until, with reasonable diligence, it might have been discovered." *Kirby* v. *Lake Shore, etc. Railroad*, 120 U. S. 130 ; *Meador* v. *Norton*, 11 Wall, 442 ; *Prevost* v. *Gratz*, 6 Wheat. 481 ; *Rosenthal* v. *Walker*, 111 U. S. 185 ; 2 Story Eq. Jur. sec. 1521 *a* ; *Veazie* v. *Williams*, 8 How. 134. See also *Jones* v. *Van Doren*, 130 U. S. 684. And while it is true that the U. S. courts, possessing the same equity jurisdiction as the high court of chancery in England, have a uniform system of equity rules and practice which they administer in each state untrammelled by local laws (*Kirby* v. *Railroad, supra*), yet the above announces the correct doctrine in equity, as applied by the state courts generally, although their statutes, like ours, may contain no exception in favor of one whose cause of action has been concealed by fraud. Angell, Lim. sec. 183; Buswell, Lim. sec. 385; 2 Wood, Lim. sec. 275; *First Mass. T. Co.* v. *Field*, 3 Mass. 201; *Bland* v. *Fleeman*, 58 Ark. 84. See also *McGaughey* v. *Brown*, 46 Ark. 35. The reason of the rule is that one shall not be permitted to take advantage of his own wilful wrong. In

a court of conscience, as Lord Redesdale expresses it, "the statute ought not to run; the conscience of the party being so affected that he ought not to be allowed to avail himself of the length of time." *Hovenden* v. *Lord Annesley*, 2 Sch. Lef. 634; Bus. Lim. sec. 22; *Evans* v. *Bacon*, 99 Mass. 213; *Traer* v. *Clews*, 115 U. S. 528; *Troup* v. *Smith*, 20 Johns. (N. Y.) 33; *Callis* v. *Waddy*, 2 Munf. (Va.) 511.

Our statute is, in express terms, made applicable to suits in equity, as well as law. Sec. 4815, Sand. & H. Dig. It follows, from the language employed, that no exception could be made in equity that would not also be applicable at law. But, even at law, while there is decided conflict, the weight of authority and the better reason is in favor of the view that a cause of action, kept fraudulently concealed, will stop the bar of the statute in favor of the one against whom the fraud is perpetrated, until the fraud is or should have been discovered. As is said by Mr. Justice Miller in *Bailey* v. *Glover*, 21 Wall. 342: "To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law, which was designed to prevent fraud, the means by which it is made successful and secure." Angell, Lim. sec. 186; *First Mass. Turnpike Co.* v. *Field*, 3 Mass. 201; *Homer* v. *Fish*, 1 Pick. 435; *Welles* v. *Fish*, 3 *Ib.* 74; *Farnam* v. *Brooks*, 9 *Ib.* 212; *Sherwood* v. *Sutton*, 5 Mason (Cir. Ct.) 143; *Mitchell* v. *Thompson*, 1 McLean, (Cir. Ct.) 96; Buswell, Lim. sec. 390; *Duffitt* v. *Tuhan*, 28 Kas. 292; *Yniestra* v. *Tarleton*, 67 Ala. 126; *Cole* v. *McGlathry*, 9 Me. 131; *Bishop* v. *Litte*, 5 *Ib.* 362; *Douglas* v. *Elkins*, 28 N. H. 26; *Harrisburg Bank* v. *Forster*, 8 Watts, 12; *Andrews* v. *Smithwick*, 34 Tex. 544; *Miles* v. *Berry*, 1 Hill, (S. C.) Law, 296.

No mere ignorance on the part of plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it. Buswell, Lim. sec. 385; Story, Eq. Jur. sec. 152; *Piper* v. *Hoard*, 65 How. Prac. 228; *Underhill* v. *Mobile Fire Ins. Co.* 67 Ala. 45; *Ramsey* v. *Quillen*, 5 Lea, 184; *Adams* v. *Ipswich*, 116 Mass. 570; *Wood* v. *Carpenter*, 101 U. S. 129; *Tyler* v. *Angevine*, 15 Blatchf. 536–41. See, also, *McAlpine* v. *Hedges*, 21 Fed. Rep. 690; *Eiffert* v. *Craps*, 58 Fed. 470.

Had Samuel W. McKneely surrendered the deed, which he had taken away, to Mrs. W. L. Terry, or some one for her, instead of giving it to one of his own relatives, with instructions "to take good care of it," as the proof shows he did, doubtless we would not now have been discussing the question of laches. That deed would have made her title clear. Without it, her rights were involved in such a tangled web as to preclude the idea of laches for not attempting to assert them. She did not know of the existence of the deed, and by no reasonable inquiry could she have ascertained any facts that could lead to its discovery. The same purpose which caused its removal in the first place doubtless controlled in its concealment, and it was only a mere chance that brought it to plaintiffs' possession. There is evidence that, on one occasion, plaintiff, Mollie C. Terry, had heard her mother say that "her uncle, Sam. W. McKneely, had come to her house after her husband's death, and made way with some paper or written

obligation relating to the John Dickson land." But there is also evidence to the effect that she did not believe what she heard. If the deed was fraudulently taken away and kept concealed by the machinations of McKneely, as the court below found, and the evidence tends to show, is Mrs. Terry to be charged, by those who stand in his shoes, with laches, for refusing to suspect him of dishonesty and fraud? We think not. *Kilbourn* v. *Sunderland*, 130 U. S. 505. And, even if her suspicions had been aroused, by what she had heard, suspicion is not discovery. *Marbourg* v. *McCormick*, 23 Kas. 43. But, if she should have suspected, and if her suspicions should have led to inquiry, then, even, the proof shows she has met every requirement that could have been reasonably expected in that particular, through her husband, W. L. Terry. The testimony is voluminous, but our conclusion from a careful consideration of it, is that the court was correct in holding that Mrs. Terry was not barred by laches, and in decreeing to her an undivided one-third interest in the lands sued for, as the heir of David H. Dickson.

4. As to whether plaintiffs, Mollie C. Terry and John D. Trigg, were each entitled to an undivided one-sixth interest in the lands sued for, as the heirs of Mrs. Lavinia McKneely, the court made no special finding, but found generally that there was nothing in their contention in this particular. This was correct. It is exceedingly doubtful whether McKneely ever entered into a contract to convey to his wife an undivided one-third interest in the lands sued for. There is nothing to show that she was asking or insisting upon anything of the kind herself, or that David H. Dickson, who is said to have procured such a contract, was ever authorized or empowered to act for her. She lived almost seven years after said contract is alleged to have

*When specific performance denied.*

been made, and it appears she died perfectly satisfied, and there is nothing to show that she ever claimed any interest in the land. It had been twenty years since the alleged agreement was said to have been made, and thirteen years since Mrs. Lavinia's death. After such a great length of time, her heirs should not be granted a decree in the nature of specific performance of an alleged executory contract, except upon proof most clear and convincing. In this case it is too vague and uncertain to warrant such a decree. The plaintiffs, therefore, as the heirs of Lavinia McKneely, take nothing by their cross-appeal.

5. Mrs. Mattie McKneely could not assert a claim for dower as an innocent purchaser for value, against the plaintiffs, McKneely, her husband, was not seized at his death of an estate of inheritance in the lands of which Mrs. Terry has been adjudged the owner. Sand. & H. Dig. sec. 2520. The legal estate was in McKneely, but the equitable estate was in her, and no right of dower can be set up against such a title. 1 Wash. Real Prop. p. 228.

*No dower in trust lands.*

6. Was Mrs. Terry entitled to rents and to a lien for same upon the share of co-tenants? Section 5917 of Sand. & H. Dig. makes a tenant in common liable to his co-tenants for rents, where he has "taken, used, or had the benefit thereof in greater proportion than his interest." There can be no doubt that a court of equity, according to the principles above discussed, will extend the time for recovery, where the cause of action has been fraudulently concealed, to the statutory period after the fraud has been, or by ordinary diligence should have been, discovered. Sand. & H. Dig. sec. 4846. Samuel McKneely died February 17, 1889. This suit was begun the 6th of March following. There was an administration upon the estate of Samuel W. McKneely, as was alleged in the amend-

*Liability of deceased co-tenant's estate for rents.*

ment to Mrs. McKneely's separate answer, and which was nowhere denied. The claim of Mrs. Terry for rents collected by McKneely, during his life, was a demand against his estate, and not against his heirs. No judgment could be legally rendered against them for such a demand. But her claim was a subsisting demand against the estate of McKneely at the time of his death, and, under the plain letter of our statute, and decisions, the demand should have been duly authenticated and exhibited to the administratrix. Sand. & H. Dig. sec. 110, subd. 5; secs. 113, 114, 115; *Walker* v. *Byers*, 14 Ark. 253.

But, if it be said that the cause of action as to rents did not accrue until after the discovery of the deed by plaintiff, Mrs. Terry, still that would not relieve her, for the deed was discovered in less than a year after McKneely's death, according to the allegations of her bill. The claim, nevertheless, should have been properly exhibited. *Walker* v. *Byers*, *supra; Bennett* v. *Dawson*, 18 Ark. 334. See, also, *Patterson* v. *McCann*, 39 Ark. 577; *Morgan* v. *Hamlet*, 113 U. S. 449.

Mrs. Terry has not established her claim for rents in the manner prescribed by our statutes. Until she has done so, plainly, she could not go into a court of equity and ask that a lien be declared upon the share of a co-tenant for such claim or demand. If there be a lien (which, in the view we have taken, it becomes unnecessary to decide) she has no standing in a court of equity to enforce it; for the lien in such a case would be the pure creation of a court of equity, growing out of no legal or contractual estate,—not a right of property, but a mere remedy, bottomed solely upon the debt or demand, and having no independent form and foundation for its enforcement. So it was held by this court in the case of a vendor's lien, and, by analogy, and with even greater reason, is the principle applicable here. *Linthi-*

*cum* v. *Tapscott*, 28 Ark. 267.    See, also, *Stephens* v. *Shannon*, 43 *id.* 464; *Waddell* v. *Carlock*, 41 *id.* 523.

The decree in favor of Mrs. Terry for an undivided one-third interest in the land was correct.   The decree as to rents accruing prior to McKneely's death was erroneous.   The cause is therefore reversed, and remanded with directions to enter a decree in accordance with this opinion, and for further proceedings.

BATTLE, J., being disqualified, did not sit in this case.