## DAWKINS v. PETTEYS.

### Opinion delivered December 13, 1915.

1. DEEDS—SIGNATURE AND DELIVERY—RIGHTS OF HEIRS.—A deed, signed by the grantor and delivered to the grantee, passes the title as between the parties, and can not be set aside by the grantor's heirs.

2. APPEAL AND ERROR—REASONS OF COURT—CHANCERY APPEAL.—The ultimate fact to be determined on appeal in chancery cases is not whether the chancellor's reasons were correct, but whether the conclusion itself, and the judgment are correct.

3. EVIDENCE—SIGNATURE TO A DEED—CONFLICTING TESTIMONY.—Appellee claimed that deceased and his wife had executed a certain deed to him; this the wife denied. Held, upon an examination and comparison of the signature of the wife, with another signature, admittedly genuine, that the chancellor properly found that the signatures were written by the same person.

4. EVIDENCE—EXECUTION OF A DEED—POSSESSION OF MUNIMENTS OF TITLE.—The possession of muniments of title, being part of the chain, when found in the possession of one who claims the ownership under a certain deed, is a circumstance supporting the claim that the deed under which he holds is genuine.

5. DEEDS—VALIDITY—PRESUMPTIONS.—Where the validity of a deed from deceased to appellee is in issue, the trial court may consider all the presumptions arising, in favor of its validity.

6. DEEDS—VALIDITY—PRESUMPTION—PAYMENT OF TAXES—RECORD.—The record of a deed purporting to have been executed by deceased to appellee, and the payment of taxes on the land conveyed, for three years, from the date of the deed to the date of deceased's death, without any objection on the part of deceased, are circumstances corroborating appellee's claim that the deed was genuine.

7. SIGNATURES—MARK—PROOF.—The method of establishing a signature as provided in Kirby's Digest § 7799, is not exclusive, and the signature of the grantee in a deed by his mark may be proved by the testimony of the grantee, who witnessed the same, as notary.

8. DOWER—ACKNOWLEDGMENT—IDENTITY OF NOTARY AND GRANTEE.—Where the grantee in a deed took the acknowledgment of the wife, releasing her dower, the attempt to relinquish dower will fail.

Appeal from Drew Chancery Court; *Zachariah T. Wood,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

The appellants, the widow and heirs of T. P. Dawkins, instituted this suit in the Drew Chancery Court on November 5, 1913, against the appellee to cancel a deed dated July 28, 1910, and recorded October 3, 1910. The deed appears on its face to have been signed by T. P. Dawkins, by his mark, and witnessed by E. J. Petteys. The deed appears on its face to have been signed by Annie Dawkins. The deed purported to be a warranty deed from T. P. Dawkins and wife, Annie, to E. J. Petteys, conveying to him a certain tract of land in Drew County for a recited consideration of $400.00. The deed was acknowledged in due form before E. J. Petteys as notary public. E. J. Petteys, who purports to have witnessed the alleged signature of T. P. Dawkins and also who took the acknowledgment, was the grantee in the deed. Dawkins died April 26, 1913. Mrs. Dawkins one of the appellants, testified that she did not sign the deed, and first learned of its existence after her husband died. She was only slightly acquainted with E. J. Petteys. Her husband was well acquainted with him. Petteys was only at witness' house one time. Her husband could not write. He signed his name to deeds and other writings by mark. Witness did not at any time appear before Mr. Petteys as notary public and acknowledge that she had signed the deed. Witness thought that her husband paid the taxes on the land mentioned in the deed after the date of the deed. Witness knew nothing of any financial transaction between her husband and Petteys, and witness herself never got any money from Petteys.

The original deed containing the disputed signature and a mortgage which Mrs. Dawkins admitted contained her genuine signature and also a deposition which bore the genuine signature of Mrs. Dawkins were before the chancellor and they have been brought to this court by *subpoena duces tecum.*

The appellee, Petteys, testified that T. P. Dawkins signed his name to the deed by his mark; that Dawkins could neither read nor write, but had the most retentive

memory of any man he ever knew; that Dawkins made his mark to his signature on the place where the mark appears on the deed. Mrs. Annie Dawkins, the wife of T. P. Dawkins, signed the deed and acknowledged the same in her proper handwriting. Witness was present when she signed it. Mrs. Dawkins saw her husband make his mark to his name in signing the deed. The deed was delivered to witness after it had been signed by Dawkins and wife. Dawkins had borrowed $350.00 from witness. He proposed to cancel the debt to witness by transferring the land to him upon witness paying an additional sum of $50.00 which witness did. Witness had paid the taxes on the land since the date of the deed. Dawkins lived about one-sixteenth of a mile from witness and witness went to Dawkins' house many times during the year 1910. Witness heard Dawkins tell Joe Mack, on the train going from Dermott to Monticello, that he had sold witness this land. Witness signed the name "T. P. Dawkins, his mark," to the deed in question and wrote his own name as a witness to the signature. Witness and Dawkins were working for the same lumber company. Witness had been in the lumber business for eighteen years.

Witness Mack testified that he knew Petteys and knew Dawkins. He remembered riding on the train with Petteys and Dawkins between Dermott and Monticello during the latter part of 1910, and remembered a land conversation on that trip, but did not remember Dawkins saying that he had sold the land to Petteys, but witness had been under the impression that he had sold the land to Petteys or the Leavitt Lumber Company, but could not say how he got such impression.

It was agreed that the land in question remained on the tax books assessed in the name of T. P. Dawkins for each year since 1910, and that for each year Petteys had paid the taxes on the land before Dawkins paid the taxes on other land he owned in the county.

It was also agreed that at the time of the commencement of the suit Petteys was in possession of the deed and also of a mortgage which had been previously executed

by Dawkins and his wife to Charlie May Boyd and which had been satisfied on March 14, 1910.

The above are substantially the facts upon which the appellants sought to have the deed cancelled and appellee resisted such cancellation, and upon which the appellee asked, in a cross-complaint, that if the court for any reason should refuse to vest the entire title in him that he should have judgment for the value of the interest which he failed to obtain and which Dawkins had warranted that he should obtain, including the purchase money and taxes.

The chancellor found that the deed was a good and sufficient conveyance on the part of Dawkins, which was binding upon his heirs, but that the deed did not convey the dower interest of Mrs. Dawkins because of the illegality of the acknowledgment, and rendered a decree vesting title in the lands in appellee, Petteys, subject to the dower interest of Mrs. Dawkins, and dismissing the complaint as to the heirs for want of equity, and refusing the relief asked by appellee in his cross-complaint because of the failure of the warranty as to the dower. The appellants duly prosecute this appeal, and the appellee prayed a cross-appeal from that part of the decree refusing to grant him the relief prayed against the appellants on account of his being deprived of the widow's dower.

*Henry & Harris,* for appellants.

1. In holding the signature of T. P. Dawkins to be valid and binding upon his heirs, and that his signature by mark made at least a *prima facie* case, and cast the burden on the plaintiffs of disproving the fact that he made his mark in person, the court erred because (1) there is no presumption that a signature by mark is genuine when attested or witnessed by the beneficiary under the instrument, and (2) the burden of proving the genuineness of the instrument is upon the party claiming title under the same.

As a matter of public policy a signature by mark cannot be attested and proved solely by the other party

to the contract. 36 Cyc. 453, authorities cited in note; 154 Ala. 299; 95 Ala. 293; 76 Ala. 247; 33 S. W. (Ky.) 1118.

While it is true that section 7799, Kirby's Digest, contains no such prohibition, nor does the statute authorizing the taking of acknowledgments declare that the officer before whom taken shall not be interested in the contract, yet this court has held that an acknowledgment taken before an officer who is a party to the transaction, even though his interest be only nominal, is invalid. 43 Ark. 420; 70 Ark. 309.

Can it consistently be said, as was done in this case, that the formal declaration or admission before a public officer and his certificate thereof is invalid, but that the unofficial certificate or attestation is valid and binding?

2. On the question of the burden of proof see 13 Cyc. 725; 11 Ark. 212; 12 Ark. 421; 56 Ark. 17.

*Williamson & Williamson,* for appellee.

1. The lower court did not, as appellants contend, hold the burden of proof to be upon the plaintiffs, but on the contrary, and as we think improperly, expressly placed the burden upon appellee. Appellee discharged this burden and proved by a preponderance of the testimony that the deed was really executed by the grantors. In addition to the direct testimony of appellee, which the court held was not of itself sufficient, the following circumstances made out a preponderance in his favor.

(*a*) The handwriting of Mrs. Dawkins upon the deed in comparison with her signature upon other instruments, admitted to be genuine.

(*b*) Possession by Petteys of the Dawkins muniments of title. 82 Ark. 492.

(*c*) Dawkins' acquiescence in the payment of taxes on the land by appellee from the time of the execution of the deed, and the fact that he never claimed to own the land after its conveyance to appellee.

(*d*) Dawkins' admission that he had sold the land to Petteys.

(*e*)    Another element in the case that has the force of substantive testimony, is the strong presumption that the signatures are genuine. Lawson on Presumptive Evidence, Chap. 5; 11 Ark. 228; 16 Cyc. 1081-1082; 6 Ark. 86.

The production of a deed by a grantee raises a presumption of delivery which can be overcome only by clear and convincing evidence.   82 Ark. 492; 86 Ark. 150; 97 Ark. 283.   See also 1 Wigmore, Evidence § 157; *Id.* § 2520 p. 3567.

2.   As to Dawkins, the deed was a valid conveyance of title to appellee, even though unacknowledged. 14 Ark. 286; 61 Ark. 542; 44 Ark. 521; 1 R. C. L. 257.

3.   His signature, and his proper execution and delivery of the deed, is sustained by the proof and the law of the case.   85 Ark. 269; 91 Ark. 268, 274; 49 Ark. 18; 51 Ark. 48; 36 Cyc. 453.

4.   The deed of T. P. Dawkins warranted the title to the land, and his failure to have the dower vested in appellee, was a breach of his contract to convey, evidenced by the deed, as well as a breach of the covenant of warranty.   85 Ark. 289; 74 Ark. 348; 36 Cyc. 639.

Even if the deed could be denied the effect of a conveyance, it would be good as an executory contract to convey.   68 Ark. 544; 1 R. C. L. 259-15; 36 Cyc. 553 and note 82.

WOOD, J., (after stating the facts).   I.   (1)   If Dawkins executed the deed to the appellee, it was good between the parties and passed the title to appellee, and Dawkins' heirs cannot set it aside. *Floyd* v. *Ricks,* 14 Ark. 286; *Stirman* v. *Cravens,* 29 Ark. 548; *Jackson* v. *Allen,* 30 Ark. 110; *Griesler* v. *McKennon,* 44 Ark. 520; *McKneely* v. *Terry,* 61 Ark. 527; 1 R. C. L., p. 257.   The only issue, therefore, between the heirs of Dawkins and the appellee was whether or not Dawkins had executed the deed. Both parties in their pleadings ask for affirmative relief.   The appellants ask that the deed be cancelled as a cloud on their title, and the appellee asks that title in him be "established and confirmed against all claims and demands" of the appellants whatsoever.

(2) In considering the question as to whether Dawkins had executed the deed, and whether the appellants were entitled to the affirmative relief of cancellation, the court in its written opinion said that the burden of proof on this issue was on the appellants. And in determining whether or not appellee was entitled to the affirmative relief as against Mrs. Dawkins, the court in its written opinion said: "Since Mrs. Dawkins denies the execution of the deed, I think the burden is on Petteys to prove that she did execute it." Both parties complain that the court erred in its ruling as to the burden of proof. It will appear from our discussion of the issues further on that the court did not misapprehend the rule as to the burden of proof. But whether the court erred in this respect it is unnecessary for us to determine on this appeal, for chancery causes are heard here *de novo*. *Benton* v. *Southern Engine & Boiler Works,* 101 Ark. 493. The ultimate fact to be determined on appeal in chancery cases is not whether the chancellor pursued correct and logical mental processes in reaching his conclusion, but whether the conclusion itself is correct, *Harriage* v. *Daly,* 121 Ark. 23; *Dicken* v. *Simpson, et al.,* 117 Ark. 304, 174 S. W. 1154.

(3) The question, therefore, for us is whether or not the chancellor's finding to the effect that Dawkins executed the deed in controversy is correct. On this issue the appellee Petteys testified that Dawkins signed his name to the deed by his mark; that he made his mark to his signature on the place where the same appears on the deed; that Mrs. Dawkins saw Dawkins make his mark to the signature in signing the deed, and that he (appellee) wrote the signature "T. P. Dawkins" and his own name as a witness. He also testified that Mrs. Dawkins signed her name to the deed. Mrs. Dawkins testified that she did not sign the deed. Necessarily it follows that if Mrs. Dawkins' testimony be true, Petteys, the appellee, had forged her signature and the signature of Dawkins to the deed. In determining whether or not the signature of Mrs. Dawkins was a forgery the court had before it

the genuine signature of Mrs. Dawkins to a mortgage which she had executed, and also her signature to a deposition, which the court compared with her purported signature to the deed in controversy. These have been brought before this court and we have examined and compared the same. The court was correct in its conclusion that there was no such dissimilarity in these signatures as to justify a finding to the effect that they were not written by the same hand. While the court made no affirmative finding on this issue, from our examination of the documents we conclude that there is such a general similarity in the letters constituting the various signatures as to warrant the inference that they were written by the same person.

(4-5) It was set up in the complaint that Dawkins acquired the land from Hannibal Jenkins, and it was shown that at the time of the institution of this suit Petteys was in possession of the original deed from Hannibal Jenkins, as well as in possession of a mortgage which Dawkins and his wife had given on the land, but the mortgage had been satisfied previous to the execution of the deed in controversy. Appellee testified that Dawkins gave him these documents at the time of the execution and delivery of the deed in controversy. The possession of these documents was a circumstance in connection with other facts in evidence tending to prove that Petteys had acquired possession of them as the purchaser of the land in controversy from Dawkins; for it is not to be presumed that Dawkins would have delivered these muniments of title to appellee if appellee had not purchased the land, nor that Dawkins would otherwise have recorded the deed. See *Morton* v. *Morton,* 82 Ark. 492; *Carter* v. *McNeal,* 86 Ark. 150; *Graham* v. *Suddeth,* 97 Ark. 283. The presumption is that appellee's possession of the deed in controversy, and the other title papers, was legal. All these presumptions could be considered by the court in determining the issue as to whether the deed was a forgery and as to whether appellants were entitled to the affirmative relief of cancellation. 13 Cyc. 725;

*Pennington* v. *Yell,* 11 Ark. 212; Lawson on Presumptive Evidence, Chap. 5, Rule 19, p. 112.

(6)    Another circumstance tending to corroborate the appellee's testimony to the effect that he had purchased the land from Dawkins was that from the time of the execution of the deed and the recording thereof in the year 1910, he had paid the taxes for each year thereafter for a period of three years before Dawkins died, and yet, notwithstanding the recording of the deed and the payment of these taxes, Dawkins during his lifetime did not challenge appellee's title.

It was shown that Dawkins paid his taxes after Petteys paid his. He must have known, therefore, that Petteys was paying taxes on this land. These are circumstances tending to show that Petteys was setting up title to the land, which Dawkins must have known, yet he did not question Pettey's claim of title.

The chancellor found that "as to T. P. Dawkins this deed is good." When all of the above facts and circumstances are considered in connection with the positive testimony of the appellee, Petteys, it cannot be said that the finding of the chancellor on this issue of fact is clearly against the preponderance of the testimony.

II.    (7)    Counsel for appellants contend that inasmuch as appellee was the grantee in the deed, the signature of Dawkins by mark has not been properly established. Our Constitution and statutes provide that no witness shall be excluded because he is a party to the suit or interested in the issue to be tried, etc. See Sec. 2, Sched. Const.; Kirby's Digest, Sec. 3093.

The statute (Kirby's Digest, Sec. 7799) provides that "signature or subscription includes mark, when the person can not write, his name being written near it and witnessed by a person who writes his own name as a witness," but this is not the exclusive method of establishing a signature by mark. *Miller, ex parte,* 49 Ark. 18; *Davis* v. *Semmes,* 51 Ark. 48; *Fakes* v. *Wilder,* 70 Ark. 449; *Ward* v. *Stark,* 91 Ark. 268.

The testimony adduced by appellee is sufficient to establish the fact that Dawkins signed the deed by making

his mark.  *Johnson* v. *Davis,* 95 Ala. 293; *McGowan* v. *Collins,* 154 Ala. 299; *Vanover* v. *Murphy's Administrator,* 15 S. W. (Ky.) 61; *Devereux* v. *McMahon,* 108 N. C. 134.

Discussion of other questions relating to the form of the signature is unnecessary.

III.   (8)   The court did not err in refusing the relief prayed in appellee's cross-complaint against the heirs of Dawkins.   Appellee admits, and his testimony shows, that the title to the dower of Mrs. Dawkins failed because he took the acknowledgment.   See *Meyer* v. *Gossett,* 38 Ark. 377-380; *Green* v. *Abraham,* 43 Ark. 420; *Muense* v. *Harper,* 70 Ark. 309.

It thus appears that it was appellee's own fault that he did not acquire title to the dower; and he is estopped from asserting that the heirs of Dawkins should make good his claim for dower.

The question as to whether Dawkins executed the deed was purely one of fact, and as before stated it can not be said that the finding of the chancellor is clearly against the preponderance of the evidence.  See cases collated in Vol. IV, Crawford's Digest, p. 75, under "c. Findings of Chancellor."

The judgment is therefore correct and must be affirmed.