## MILLER v. MILLER.

### Opinion delivered June 4, 1917.

1. ADVERSE POSSESSION OF WIDOW AGAINST REMAINDERMAN.—A. was widow, and B. the son and only heir of deceased. A. had occupied certain lands with deceased, and continued to do so after his death. *Held,* in order for A. to set the statute of limitations in motion against B. it was necessary for her to hold the title adversely, and to have exercised such acts of ownership as to indicate an intention on her part to hold the land adversely to B., the remainderman.

2. REFORMATION OF DEEDS—MUTUAL MISTAKE.—Deed reformed to conform to the intention of the parties.

3. APPEAL AND ERROR—APPEAL FROM CHANCERY—ERRONEOUS REASONS FOR RULING.—A cause will not be reversed where the chancellor reached a correct conclusion, although by erroneous reasoning.

Appeal from Hot Spring Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

*H. B. Means,* for appellant.

1. The finding of the chancellor that there was no mutual mistake, leaves only one question for this court; does the fact that appellee used and occupied the land for more than seven years vest the title? The testimony fails to show adverse possession; but does show that her possession was merely *permissive* and not hostile nor *adverse.* 43 Ark. 486; 68 *Id.* 554; 59 *Id.* 268; 12 L. R. A. (N. S.) 1147; Ann. Cases, 1913, E 487, A 561; *Ib.* 1912 C, 644.

*Henry Berger,* for appellee.

1. The court held there could be no reformation as there was no mutual mistake. 77 Ark. 614; 74 *Id.* 614; 79 *Id.* 592; 83 *Id.* 131; 89 *Id.* 309; 101 *Id.* 135. But if the half acre was omitted by mutual mistake, the deed should

be reformed so as to include the *old homestead* as enclosed and occupied by appellee for 18 years. 84 *Id.* 623; 149 S. W. 60.

2. The true rule is settled in 68 Ark. 551; 43 *Id.* 469; 100 *Id.* 555. The appellant is barred. 80 *Id.* 444; 50 *Id.* 626.

3. A title by adverse possession may be quieted. 38 Ark. 181; 34 *Id.* 547; *Ib.* 524; 101 *Id.* 409.

### STATEMENT BY THE COURT.

This suit was instituted by appellee against the appellant, Jas. J. Miller, to reform a deed.

The appellee alleged that she is the widow of Jacob Miller, who died in the year 1906; that Jas. J. Miller, appellant, is the son of Jacob Miller by a former marriage and that Mollie Gus Miller is the wife of Jas. J. Miller. After the death of Jacob Miller, she and Jas. J. Miller entered into an agreement by which she was to relinquish her dower in four or five tracts of land owned by Jacob Miller in consideration that Jas. J. Miller would deed his interest in fee simple to her, Mary J. Miller, in a piece of property which was the homestead of Jacob Miller at the time of his death, consisting of a house and lot described as follows:

Part of the SE¼ of the SE¼ of section 22, township 4 south, range 17 west, more particularly described as commencing at a point 258 feet north of the SE corner of said tract, thence west 239 feet, north 270 feet, thence east 239 feet, thence south 270 feet, containing one acre more or less.

That by mutual mistake the deed executed by the appellant, Jas. J. Miller, and his wife, Mollie Gus Miller, was made to read:

Commencing at the SE corner of the SE quarter of Sec. 22, Tp. 4 S., R. 17 west, running on section line North 4 chains to place of beginning, thence west 2½ chains, thence North 4 chains, thence East 2½ chains, to Section line, containing One Acre, more or less.

The appellants admitted that they entered into an agreement with appellee for a division of the property

but denied that there was a mutual mistake in their deed to the appellee but alleged that the deed which they executed to the appellee was in accord with the terms of the agreement between them and fully expressed the intention of the parties to the agreement.

The appellee testified that she was married to Jacob Miller in 1898, and had lived on the land in controversy as their homestead ever since. Her husband, Jacob Miller, had been dead about ten years. The land was enclosed by a fence when she and Miller were married and is enclosed by the same fence at the present time. She and her stepson, Jas. J. Miller, agreed upon a division of the property after the death of her husband, Jacob Miller. He was to let her have the old home place and she was to assign him the other property. She thought that this was her home and had worked it for ten years. If Miller knew better, he knew more than witness did. Witness thought at the time she received the deed from him it contained all that was under fence, had no experience in land description, thought it was all hers, did not know anything to the contrary until last fall when she was trying to sell it and the deed did not call for the entire parcel of land that she was supposed to own. The land she claimed is 270 feet front by 239 feet deep. There was nothing said about her owning more land than the deed called for until she undertook to sell the land. She exhibited as a part of her testimony the deed from Jas. J. and Mollie Gus Miller.

The appellee was corroborated by her son, Will Dawson. He stated that the fence was at the same place; that he resided with his mother and Jacob Miller, his step-father, during the entire time of their marriage. The piece of land in controversy was enclosed with a fence all that time. The line fence between his mother's property and Jim Miller's had been renewed under Jim Miller's direction by Jack Hall. The fence is now at the same place that it was before the death of Jacob Miller and is at the same place it was when the property was deeded to witness' mother. There was nothing said about this

description of the land until his mother tried to sell the property about a year before.

The appellant, Jas. J. Miller, testified that there was no mutual mistake; that there was nothing said about the fence being the dividing line. The deed describes one acre which is the original homestead, that the witness' father purchased from Bob Thrasher. He afterwards purchased other lands joining it on the west. It was agreed that Mary J. Miller was to have one acre and I was to have the other property. Witness had no knowledge that she claimed more than the one acre until about one year ago. The west fence is where it was when they made the deeds. "I was living in Little Rock at the time," said the witness. Witness visited Malvern, where appellee, his step-mother, resided possibly twice a year. Jack Hall built no fence for witness, might have done some little patching. On witness' visits to Malvern he always visited his step-mother, observed that she was using all the land in the enclosure and witness made no objections. He let her use it just because he did not want the renters to have it. She never made any complaint to witness that the deed was not correct.

Mrs. Mollie Gus Miller, the wife of appellant, testified that she was present when the deeds were made dividing the property. It was her understanding that it was one acre that was intended to be deeded to Mary J. Miller. There was nothing said about the fence west of the property deeded Mary J. Miller being the line.

Upon the above testimony the court found that there was no mutual mistake in making the deeds and no reformation may be had, but that Mary J. Miller, the appellee, had acquired title to the property in controversy by adverse possession and that the interest in Jas. J. Miller created a cloud on appellee's title. A decree was entered divesting the title out of Jas. J. Miller to the land in controversy and vesting the title in the appellee. From that decree this appeal has been duly prosecuted.

WOOD, J., (after stating the facts). (1-2) The court was correct in vesting the title in the appellee, but was in

error in grounding its decree on the theory that the appellee had acquired title by adverse possession for more than seven years. There had been no visible change in the possession of appellee since the death of her husband. Her possession was amicable in its origin insofar as the appellant, Jas. J. Miller, was concerned. In order to have set the statute of limitation in motion it was necessary for the appellee to have held the title adversely and to have exercised such acts of ownership as to indicate an intention on her part to hold the land adversely to appellant, who was the remainderman. Appellee's possession was permissible so far as the appellant was concerned and it remained so until the appellee indicated a purpose to sell the land and nothing was done by the appellee herself until that time that was calculated to bring home to the appellant any knowledge of the fact that it was her purpose to hold the land adversely to him. Such we think is the correct conclusion.

The testimony of appellee is clear and convincing to the effect that after the death of her husband, she and her step-son, the appellant, entered into a contract by which the appellant was to deed her his interest *in the old home place* in consideration of her in turn deeding to him her dower in certain other tracts of land. As she understood it, it was the land on which she had resided with her husband since their marriage, in 1898. She said she had no experience in land descriptions and never measured the land as described in the deed, but she thought that it was all hers under the contract. Appellant admits there was a contract to convey the old homestead, but says there was no mutual mistake in making the deed but he does not enter into detail in explaining the terms of the contract. He simply states that it was agreed that Mary J. Miller was to have one acre and that he was to have the other property, but he states also that the west fence, a part of the fence enclosing the homestead was continued where it was when the deeds were exchanged. He visited his step-mother at least

twice a year and observed that she was using the property that enclosed the homestead.

This testimony convinces us that the terms of the contract between Mrs. Miller and her step-son, Jas. J. Miller, the appellant, was as she states it. The testimony is clear, unequivocal and convincing that the contract contemplated that appellant was to convey his interest in the homestead, and that the old homestead as the parties then understood, consisted of the land that was enclosed and occupied as a homestead, which embraced the parcel now in controversy. The testimony of Mrs. Jas. J. Miller is of no probative effect and does not contradict or lessen the weight to be allowed to the testimony of the appellee. For although she says she was present at the time the deeds were made, she does not say that the contract between her husband and the appellee contemplated that her husband should deed to the appellee only one acre. She says that it was *her understanding* but does not say that it was the understanding between the parties to the contract. The testimony upon the whole meets every requirement of the law to entitle the appellee to a reformation of her deed in accordance with the contract as she stated it to be.

(3) In the recent case of *Dawkins* v. *Petteys,* 121 Ark. 498, we said, "The ultimate fact to be determined on appeal in chancery cases is not whether the chancellor pursued correct and logical mental processes in reaching his conclusion, but whether the conclusion itself is correct. *Harriage* v. *Daly,* 121 Ark. 23; *Dicken* v. *Simpson et al.,* 117 Ark. 304, 174 S. W. 1154."

Although the chancellor did not base his conclusion upon sound reasons, the decree was nevertheless correct and is therefore in all things affirmed.