STERLIN *v.* EVERETT.

4-7795                                                    191 S. W. 2d 949

Opinion delivered January 14, 1946.

*Opie Rogers,* for appellant.

*W. F. Reeves,* for appellee.

SMITH, J.    Mrs. Emma Sterlin Tuel died intestate June 2, 1944. Her heirs at law surviving her were a son, named Cratus Sterlin, and a 14-year-old granddaughter, named Adele Everett, the only child of a deceased daughter. By a second marriage she became Mrs. Tuel, but she was a widow at the time of her death. The witnesses re-

fer to her as Mrs. Sterlin, and we refer to her by that name. A few months before Mrs. Sterlin's death there was placed of record a deed from her to her son, Cratus, in which she apparently conveyed to her son 100 acres of a 385-acre tract of land, which she at one time owned, and certain lots in the town of Elba. The date of this deed is mutilated. It was apparently first dated April, 1935, but the date 1935 was marked out, and the date 1941 inserted. It recited a consideration of $2,000 in hand paid by Cratus to his mother. The acknowledgment which purports to have been taken by T. M. Williams, a justice of the peace, has the same mutilation of dates. This deed was filed for record April 14, 1944, and was duly recorded.

The father of Adele, as her next friend, filed this suit to cancel this deed, it being alleged that Mrs. Sterlin had never executed the deed and that it was forgery. The relief prayed was granted and the deed was canceled, and from that decree is this appeal. In this decree it was ordered that an administrator be appointed with directions to assemble, administer upon and distribute the personal property of Mrs. Sterlin, and no one complains of that order.

There was much testimony to the effect that Mrs. Sterlin referred to this deed on numerous occasions as a "bogus deed," and that she denied ever having executed it, and she said that Cratus told her he would destroy it. This testimony was all hearsay evidence, and must be disregarded for that reason. *Strickland* v. *Strickland,* 103 Ark. 183, 146 S. W. 501.

There was competent testimony, however, which casts grave doubt as to the authenticity of the deed. A justice of the peace testified that about the time of the date of this deed Cratus asked him if he would take the acknowledgment of a deed without requiring the grantor to appear before him, and the witness declined to do so.

The deposition of T. M. Williams, another justice of the peace, who made the certificate of acknowledgment, was taken and his testimony leaves much to be desired. He was interrogated in regard to the 1941 deed as fol-

lows: "Q. Do you remember when the defendant, Cratus Sterlin, brought you a deed purporting to have been signed by his mother conveying to him certain land and lots in Elba? A. Yes. Q. Was his mother present at the time? A. No. Q. State whether or not he wanted you to certify and sign the acknowledgment to that deed. A. Yes. Q. Please state as well as you can remember what he said to you about it. A. Well, the best I remember Cratus said that he wanted to go down there and make a deed. I told him I was busy. And I believe in a day or two he brought the deed out there. He came by and I made it, but I didn't acknowledge it that day and he said something about he would get his mother to sign the deed and that I could acknowledge it, and I did. Q. Did you see his mother sign that deed at any time? A. No. Q. Did she ever appear before you and acknowledge that she had signed that deed? A. No. Q. So far as you know, if she ever signed you do not know it? A. No. Q. Did you ever say anything to her about it afterwards? A. No, I never did say anything to her about it."

On the cross-examination the witness was asked only this one question: "Q. The deed you mention was in 1942, was it? A. Yes. No, I think it was in 1941."

The witness was recalled for further direct examination by appellee's attorney, and was asked: "Q. Was this the only deed you ever made and certified the acknowledgment to for them? A. No. Q. Was it the only deed you ever made at his request for his mother to sign for him? A. Yes. The only one he ever requested without his mother being present. Q. This was a deed, as I understand you, that purported to convey to Cratus Sterlin certain lands and lots in Elba including her home? A. Yes."

Why the witness was not asked by counsel for either party about the other deed from Mrs. Sterlin, the acknowledgment of which he had taken, does not appear.

The *prima facie* effect of this testimony is that the deed was a forgery, and the court so found, although there was other testimony to the effect that Mrs. Sterlin did in fact sign the deed and deliver it, although she did

not acknowledge it. If she signed the deed and delivered it the deed was valid between the parties, although it was not acknowledged. *Floyd* v. *Ricks,* 14 Ark. 286, 58 Am. Dec. 374; *Jackson* v. *Allen,* 30 Ark. 110; *McKneely* v. *Terry,* 61 Ark. 527, 33 S. W. 953; *Dawkins* v. *Petteys,* 121 Ark. 498, 181 S. W. 901.

If Mrs. Sterlin signed the deed she probably delivered it as Cratus had it in his possession. The deed had attached to it two documentary stamps of $1 each, and two for 10 cents each.

Cratus did not deny the testimony of the two justices of the peace, that he had asked them to take his mother's acknowledgment without the appearance of his mother, but he offered an explanation which, while it is unusual, is not improbable and which we think the testimony shows to be true. It was to the following effect.

His mother became an invalid and sold him all of her real estate for the sum of $2,000, and gave him a deed reciting its payment, although it was not paid in cash at the time. Payment, however, was secured by a mortgage given by Cratus to his mother, covering considerable live stock, farming implements and other personal property. This consideration of $2,000 was evidenced by four notes for $500 each, payable in one, two, three and four years, respectively. A significant fact is that the deed to Cratus from his mother and the mortgage from him to her bear the same date—April 1, 1935—and both instruments were acknowledged before T. M. Williams, as justice of the peace. These may have been the other instruments referred to by the witness in the deposition from which we have quoted. Cratus further testified that notwithstanding the execution and delivery of the deed to him from his mother, it was agreed that she should retain possession of the land and, in consideration of that possession, he should have the right to pasture the land, a right which he testified was to offset the interest on the notes.

This mortgage from Cratus to his mother was filed for record January 21, 1939, and was duly recorded. Indorsed upon the margin of the record where the mortgage is recorded are four small payments, which are also in-

dorsed upon the mortgage itself. The indorsement on the record was attested by the clerk and recorder under date of August 2, 1939, although none of the payments were made that day. The clerk in office now, and at that time, testified that he was familiar with Mrs. Sterlin's signature and that the indorsement was her genuine signature, and that the signature to the indorsement on the mortgage was the same as that to the deed.

Cratus was asked by appellee's counsel if this mortgage had not been given to protect him against a contingent liability which he had incurred by reason of having indorsed certain notes as surety, and he denied that he had. There is no intimation that this was true, save only the fact that he was asked the question, and he denied having executed the mortgage for that purpose, his testimony being that he gave the mortgage to secure the payment of the purchase price of the land.

Cratus explained that the deed was not placed of record as Mrs. Sterlin did not want appellee's father to know that she had executed the deed. It is certain that on the same day on which Cratus testified the deed from his mother was delivered to him, he gave her a mortgage for the exact amount of the consideration of the deed, and we think it equally certain that the deed was the consideration for the mortgage.

The chirography and orthography employed shows that to some extent these parties were illiterate and wholly inexperienced in the formalities of conveyancing. Cratus testified that his mother sold 285 acres of the 385-acre tract, for the consideration of $500, after having given him a deed to all the land. The land sold was cut-over land and was of small value, while the 100 acres remaining was partly cultivated and constituted the homestead. Cratus further testified that it was agreed that his mother execute a deed for the 285-acre tract, and that she did so, and that the $500 paid for the 285 acres was credited upon his debt to his mother, and that this left him owning the 100-acre homestead, and the town lots, and that the purpose of the deed dated April 1, 1935, which the court canceled as a forgery, was to evidence

his title to the land that remained after the sale of the 285 acres.

The originals of all these instruments above referred to are in the record, and we have compared them with the receipts signed by Mrs. Sterlin, of which more will be presently said, and we are convinced that Mrs. Sterlin signed both deeds to Cratus herein referred to.

But we are not at all convinced that Cratus has paid all the $2,000 recited as the consideration in each of the deeds to him, and in the mortgage from him. The court below did not consider or pass upon this question. The suit was brought to cancel the 1941 deed as a forgery and that relief was granted, but for reasons herein stated that decree will be reversed and the cause will be remanded for the purpose of determining whether Cratus has paid th entire purchase price for the land, and if not, what balance remains unpaid. Unquestionably he is entitled to certain credits, one of these being the $500 received for the 285-acre tract of land.

Cratus offered in evidence one of the receipts above referred to, which reads as follows:

"PAID ON PLACE

| | |
|---|---|
| Pade on place Sept. 8, 1936 | $ 50.00 |
| Pade on place Dec. the 10, 1939 | 500.00 |
| Pade on place | 2,411.50" |

This writing has on its back the indorsement of Mrs. Sterlin. Cratus probably made one or both of the first of these payments, but at the bottom of the instrument which we have copied appears the notation in the same handwriting. "Pade on place $2,411.50," which Cratus testified completed the payments. Now it is certain that he never at any one time paid that amount and he does not contend that he did. He may have paid that amount altogether, but this we do not decide.

As has been said, administration on the estate of Mrs. Sterlin has been ordered to collect and distribute the personal property. Any part of the purchase price of the land remaining unpaid should be collected by the

administrator, and he may be made a party to this litigation upon the remand of the cause for that purpose. Our conclusion is that Cratus did purchase the land and has the title thereto, but he should be required to pay any balance of unpaid purchase money, and when that balance, if any, has been ascertained a lien therefor should be declared upon the land.

The decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.