**In re Danny Joe BALDRIDGE.**

**Dana Johnson, Plaintiff,**

**v.**

**Danny Joe Baldridge, Defendant.**

**Bankruptcy No. 99–43852S.
Adversary No. 99–4184.**

United States Bankruptcy Court,
E.D. Arkansas,
Western Division.

Nov. 30, 2000.

---

M. Randy Rice, Chapter 7 Trustee.

Kevin Beckham, Jacksonville, AR, for plaintiff.

Frances Morris Finley, Little Rock, AR, for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court upon the trial of the adversary proceeding objecting to the debtor's discharge pursuant to sections 727(a)(2), (a)(4)(A). Trial was held on September 7, 2000, after which the parties submitted written post trial argument whereupon the matter was under submission.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified by 28 U.S.C. § 157(b)(2)(I), (J).

## I. FACTUAL BACKGROUND

### Baldridge's Inheritance

Danny Baldridge's father died sometime in the early 1990's and his step mother died several years after that. When the estate was finally settled, it was discovered that Danny Baldridge had somehow obtained more than his fair share of the estate. Accordingly, he was compelled to execute promissory notes to each of his four sisters in the amount of $18,452. When he did not pay on the notes, his sisters instituted a civil action in state court, sometime in 1999. These notes, list-

ed on the schedules, constitute eighty percent of Baldridge's total debt.

## Acquisition of Real Property

In September 1998, Baldridge's uncle was undergoing treatment for cancer and thought he was dying. In an effort to help his nephew, he decided to deed some rental property he owned to Baldridge. The uncle established the price of $30,000 for the property, which he believed had a value of $157,000, and executed and delivered a deed in favor of Baldridge [1] who had prepared the deed for his uncle. Baldridge, unable to obtain any credit on his own, obtained the funds through his wife, with his mother-in-law providing the collateral for a loan. The next day, Baldridge approached his uncle with a substitute deed, this one granting the property solely to Kimberly Baldridge, Baldridge's wife. The uncle signed the substitute deed because Baldridge requested it. He had little interest in assisting Kimberly because, "I didn't hardly know Kimberly." As a condition of selling the property, the uncle also requested that Baldridge begin making payments to his sisters on the money he owed them. Baldridge made a couple of $100 payments, then ceased when his wife mortgaged the property and thereby incurred a new monthly household debt. The property was mortgaged in order to pay off Baldridge's substantial federal tax debt. The real property is not listed on the schedules although the debtor lists a $1,548 monthly mortgage payment as a household debt. The debtor also claims to own no real property, but he lists real estate taxes as an expense on his schedules.

## Kimberly's Business

Kimberly Baldridge operates a medical care business known as DanAnne, Inc. which employs both Baldridge and Kimberly. Although Baldridge works a substantial number of hours at the business

and, in the past, was paid for those hours, he now collects only $50 per week for his employment. This was done, he testified, because he had tax problems. That is, he did not want to pay taxes on the income he earned from his wife's business and therefore took a smaller sum as wages than in the past. Although he is entitled to between $400 and $600 per week for the work he performs, he reports only $50 in income from this work.

Instead of wages, the Baldridges arranged for substitute remuneration to be given to Baldridge. For example, debtor transferred the vehicle titled in his name to his wife's corporation which then purchased a new truck for his use. The business makes all of the loan and insurance payments on the vehicle which Baldridge uses for personal, rather than business, use. In fact, when his wife is required to travel for her business, she uses a car titled in her name and charges the corporation for the mileage.

Neither the sale of debtor's vehicle nor any ownership interest in any vehicle is listed on the schedules. In addition, although the debtor admits that the use of the truck constitutes income, that use is not reported on his federal tax returns.

## Bank Accounts

Prior to filing his chapter 7 case, the debtor was either an owner of several bank accounts or authorized to sign on the accounts. Most, but not all, of the accounts were closed prior to the filing of the chapter 13 case because his accountant advised him that the IRS would soon levy on the accounts to collect on his federal tax obligations. Specifically, the debtor admitted to having at least three accounts, two with the Bank of the Ozarks and one at Metropolitan Bank. The accounts were either closed within the year prior to the filing of this case or soon thereafter.

---

**1.** As an afterthought, the uncle gave five percent of the property to one of his nieces, Baldridge's sister Jana, because she was living with the uncle and caring for him while he was so ill. Jana was paid her five percent interest in the property when Baldridge's wife, Kimberly, mortgaged it.

Maintenance of his own accounts are unnecessary because Baldridge has full access to his wife's bank accounts. He signs checks on his spouse's accounts as well as on her corporate account. These accounts are not listed on the petition.

## II. CONCLUSIONS

■ Section 727(a), provides as follows: The court shall grant the debtor a discharge, unless,

(2) the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

    (A) property of the debtor, within one year before the date of the filing of petition; * * *

(4) the debtor knowingly and fraudulently, in or in connection with the case—

    (A) made a false oath or account; * * *

11 U.S.C. § 727(a)(2)(A), (4)(A). A plaintiff has the burden of proving an objection to discharge by the preponderance of the evidence. *In re Scott,* 172 F.3d 959, 966–67 (7th Cir.1999); *In re Hogan,* 208 B.R. 459 (Bankr.E.D.Ark.1997).

### A. False Oath: Section 727(a)(4)

■ Section 727(a)(4) provides the penalty for a debtor who fails to truthfully list all assets and fully answer the questions in the petition under oath. This section ensures that debtors will accurately report their interests in property in order that adequate information is available to anyone interested in the debtor's financial affairs. This serves the policy of permitting parties in interest to rely upon the information in the schedules without examination or investigation. In light of this requirement, the debtor has a "paramount duty" to ensure that the answers

are made truthfully and completely. *Craig,* 252 B.R. at 828–29. *Accord Kaler v. McLaren (In re McLaren),* 236 B.R. 882, 894 (Bankr.D.N.D.1999).

■ In order to demonstrate discharge should be denied under this paragraph, a plaintiff must prove by a preponderance of the evidence that:

(1) the debtor made a statement under oath;

(2) the statement was false;

(3) the statement related materially to the bankruptcy case;

(4) the debtor knew the statement was false; and

(5) the debtor made the statement with fraudulent intent.

*Kaler v. McLaren (In re McLaren),* 236 B.R. 882, 894 (Bankr.D.N.D.1999); *Allied Domecq Retailing USA v. Schultz (In re Schultz),* 2000 WL 575505, * 7 (Bankr. N.D.Ohio Apr.21, 2000). False statements as well as omissions from the schedules may qualify as false oaths if they are made knowingly and with fraudulent intent. *Id.* at *8. Of course, the omissions must relate to a material matter and may be material even if they do not cause financial prejudice. *Chalik v. Moorefield,* 748 F.2d 616 (11th Cir.1984). An omission is material if it relates to the discovery of assets. *Schultz* at *10. The materiality of an omission is not lessened by the fact that an omitted asset is exempt or otherwise unavailable for distribution to the creditors. Thus, the debtor's assertion to the contrary, citing *In re Winchester,* 155 F. 505 (W.D.Pa.1907), is simply incorrect under the Bankruptcy Code and the case authority in this circuit. *See Mertz v. Rott,* 955 F.2d 596 (8th Cir.1992).

■ **1. Failure to List Bank Accounts on the Schedules.** There is no dispute that the debtor failed to list at least three bank accounts on his schedules. Indeed, he freely admits to the existence of those accounts, merely shrugging that he forgot about them. Since one of the accounts at Bank of the Ozarks appears to

have been utilized by both he and his wife for many personal and family expenses, this statement is not credible.[2] The queries on the form schedules would have twice prompted Baldridge to recall that he owned or had access to several accounts. Moreover, the fact that he and his wife went through so many financial machinations, including closing accounts by removing his name, to avoid payment of his federal taxes, makes his statement that he didn't think of the accounts a clear falsehood. *Cf. In re Chavin*, 150 F.3d 726, 729 (7th Cir.1998) ("A denial of knowledge may be so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it.").

Rather than contesting the omissions, Baldridge asserts that since there was little or no value in the accounts at the time they were closed, the omissions were not sufficiently material to permit denial of discharge. This argument ignores the purpose of the statute and improperly diminishes his obligations under the Bankruptcy Code. The value of property which is not disclosed on the petition, particularly as it relates to bank accounts, may have little relevance to the concept of materiality. Few, if any, assets are more material to a consumer debtor's financial affairs than a bank account, for it is from that kind of asset that the creditors can discern not only an overall picture of the debtor's financial affairs, but also the details of the debtor's finances. Accordingly, the omission of any and all bank accounts to which the debtor had access constituted a false statement that related materially to the case.

**2. Failure to Disclose Transfer of Real Property.** In September 1998, less than one year prior to the filing of the chapter 13 petition, Baldridge acquired title to real property. Since he did not disclose either the acquisition or the subsequent transfer to his wife, he made a false oath within the meaning of section 727(a)(4).

Under Arkansas law, a deed, signed and delivered passes title to the grantee. *Dawkins v. Petteys*, 121 Ark. 498, 181 S.W. 901 (Ark.1915). Delivery, a substantive and specific act, occurs if the grantor intends to deliver title and the grantee evidences an intent to accept the deed. *Chambers v. Burke*, 194 Ark. 665, 109 S.W.2d 117 (Ark.1937); *accord Holt v. Werbe*, 198 F.2d 910, 917 (8th Cir.1952). Delivery occurs even if the deed is later returned to the grantor for some other act or alteration to be made. *Brooks v. Isbell*, 22 Ark. 488 (Ark.1861).

The uncontroverted testimony of Baldridge, as well as that of his uncle, indicates the uncle's intent to deliver the deed to Baldridge. Baldridge's uncle thought he was dying, and he desired to help his nephew. Accordingly, he directed that a deed be prepared, signed it, and handed it over to Baldridge. Baldridge accepted the deed. Indeed, as his wife testified, "Danny desperately wanted to purchase the property." At that moment, title passed to Baldridge, *see Holt v. Werbe*, 198 F.2d at 917, whether or not Baldridge delivered the agreed consideration, *see Johnson v. Ramsey*, 307 Ark. 4, 817 S.W.2d 200 (Ark.1991), and despite the fact that the deed was returned the next day, unrecorded, see *id.* Thus, under Arkansas law, in September 1999, Baldridge acquired title to real property with a value of well over $100,000. The next day, he caused the property to be transferred to his wife. Both of these transactions occurred within one year of the filing of the chapter 13 petition. Thus, when he stated on his petition that he had made no trans-

**2.** A review of the account ledgers reveal that Baldridge used his wife's accounts for his personal expenses. Indeed, the ledgers reflect ATM withdrawals for cash to Danny Baldridge and a Josh Baldridge, the $100 payment to one of Baldridge's sisters, as well as payments for basic household expenses such as groceries, diapers, dog food, flowers, Christmas gifts, clothing for the children, and life insurance.

fers of property, that statement, made under oath, was false.

■ 3. **Failure to Disclose Transfer of Vehicle.** In or around December 1998, within one year of the filing of the chapter 13 petition, Baldridge transferred his interest in his 1990 Chevrolet S–10 to his wife's corporation. The corporation then purchased a 1999 Sierra for Baldridge to use as his personal vehicle. Neither the transfer nor the interest in the vehicle is disclosed on the schedules filed in the case. The failure to disclose the transfer of this vehicle on his schedules is an omission constituting a knowingly false statement which is materially related to his bankruptcy case.

■ 4. **Fraudulent Intent.** Not only did the debtor know his statements and omissions were false, as discussed above, he made the false statements with the requisite fraudulent intent. It is well settled that fraudulent intent may be inferred from circumstantial evidence or from a course of conduct. *Schultz* at *9. Moreover, statements made with reckless indifference to the truth are regarded as intentionally false. *In re Sanders,* 128 B.R. 963. Baldridge and his wife freely admit to various financial schemes, including fraud on his federal income tax returns and transferring virtually all of his assets to his wife or his wife's corporation to ensure that his creditors not reach his assets.

■ Second, although specific questions on the bankruptcy schedule forms prompted disclosure of his bank accounts and other assets, he claims to have forgotten each and every bank account he held or had access to within a year. While a debtor may plausibly forget one of many accounts which may have been closed in the year prior to a bankruptcy filing, Baldridge's claim that he forgot that he held any accounts is so clearly false that the Court can infer a fraudulent intent.

■ In addition to the absurdity of forgetting all bank accounts, there are sim-

ply too many omissions of material matters for the Court to accept the Baldridge's assertion that they were "inadvertent." Not only does Baldridge fail to disclose his true income, he fails to disclose each and every asset or transfer of asset of any value. Finally, the debtor's demeanor at trial, including the palpable rancor in his voice when discussing his sisters and their attempts to obtain their inheritance, are indicative of the debtor's motives behind secreting his property from the reach of all his creditors, not merely the IRS. While it is true that the immediate threat of seizure of property by the IRS may have been an impetus for some of the transactions, he clearly intended that no creditors, including his sisters, should be able to reach his assets. Therefore, with fraudulent intent, he omitted information that would have revealed his assets and financial transactions.

### B. Transfer of Property: Section 727(a)(2)

■ The Court also finds that the plaintiff sustained her burden with regard to section 727(a)(2)(A). In order to meet this burden, a plaintiff must show by a preponderance of the evidence that:

(1) a transfer or concealment of property occurred;

(2) the property was property of the debtor;

(3) the transfer occurred within one year of the filing of the petition; and

(4) the debtor had, at the time of the transfer, intent to hinder, delay or defraud a creditor.

*Allied Domecq Retailing USA v. Schultz (In re Schultz),* 2000 WL 575505 (Bankr. N.D.Ohio Apr. 21, 2000). In addition to the transfers themselves, omitting information from the schedules may be construed as a concealment occurring both before and after the filing of the case for purposes of this section. *United States v. Craig (In re Craig),* 252 B.R. 822, 827–28 (Bankr.S.D.Fla.2000)("[F]ailure to disclose

a bank account in which the debtor deposits funds constitutes concealment."); *Schultz*, at *6. Moreover, maintaining bank accounts in someone else's name may also constitute a concealment. *Schultz*, at *6.

 The Court has already determined that transfers of property of the debtor occurred within one year before the filing of the petition. The debtor transferred his interest in real property and a vehicle to his wife and his wife's corporation prior to the filing of the bankruptcy case.

Section 727(a)(2) also requires the Court to find an intent to deceive and this element involves a two-part inquiry. *See generally Ray v. Graham (In re Graham)*, 111 B.R. 801, 805 (Bankr.E.D.Ark.1990). First, the debtor's actual intent must be found as a matter of fact from the evidence presented. The second prong of the inquiry involves a determination, as a matter of law, as to whether the demonstrated intent constitutes the intent proscribed by the statute. The question is whether the intent is sufficiently abusive to merit denial of discharge. *See Graham*, 111 B.R. at 805. The Court also finds that, at the time of the transfers, he had an intent to hinder, delay or defraud his creditors, including his sisters.

In addition to the facts discussed above, in determining whether fraudulent intent existed, the Court has also considered the demeanor and testimony of the debtor which indicated to the Court a lack of truthfulness. While the Court believes the debtor's admissions that he made the transfers with the intent to remove them from the reach of his creditors, the Court further infers from all of the facts and circumstances that he had the requisite fraudulent intent in so doing. The Court does not believe the minimal explanations of neglect, lack of knowledge and mere inadvertence. There are simply too many omissions and transfers of assets to accept these explanations. The failure to come forward with credible explanations for the

transactions, the lack of candor with the Court, the transfers to his wife, combined with the fact that the debtor continues to live off the income secreted or derived from the property he transferred to his wife, lead inescapably to the conclusion that Baldridge's transfers were fraudulently intended to shield assets from his creditors, including his sisters. Accordingly, it is hereby

**ORDERED** that judgment will be entered in favor of the plaintiff and the debtor will be denied his discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(4).

**IT IS SO ORDERED.**